In the Matter of Proving the Last Will and Testament of MARGARET McGILL, Deceased, as a Will of Real and Personal Property.

ISABELLA PATTERSON and Others, Appellants; J. J. KARBRY O'KENNEDY and THOMAS A. HART, Respondents.

First Department, March 5, 1920.

Wills — probate — evidence establishing due execution without fraud, deceit or undue influence — revocation — written direction to attorney to destroy.

On a proceeding for the probate of a will it appeared that the testatrix was a maiden lady about eighty years of age at the time of the execution of the will, with second cousins of the half blood as her nearest next of kin; that

she kept house alone and that twelve years before the execution of the will a young man went to live with her as a boarder and continued to make his home with her until her death. By the will in question she gave $1,000 to her attorney and left the residue of her estate to the young man. By a prior will she had left $1,000 to the young man and the same amount to each of several relatives, and had left the remainder to her attorney. On all the evidence,

*Held,* that the will was duly executed without fraud, deceit or undue influence;

That a letter, written by the direction of the testatrix to her attorney, executed in the manner required by the statute for the revocation of a will, providing as follows, " Please destroy the Will I made in favor of. Thomas Hart," and delivered on the day prior to the death of the testatrix to the attorney at a hospital from which he was not released until after her death, did not in and of itself constitute a declaration of revocation of the prior will *ipso facto*, but merely constituted authority for the destruction of the will.

CLARKE, P. J., and MERRELL, J., dissent, with memorandum

APPEAL by Isabella Patterson and others from a decree of the Surrogate's Court of the county of Bronx, entered in the office of said court on the 20th day of May, 1919, admitting to probate as the last will and testament of Margaret McGill, deceased, a paper writing bearing date of September 23, 1916, and dismissing the objection to the probate thereof, with notice of intention to bring up for review the intermediate order made and dated the 27th day of November, 1918, framing issues to be submitted to the jury.

*John Ewen* of counsel [*Ward V. Tolbert* with him on the brief; *Wilder, Ewen & Patterson,* attorneys], for the contestants, appellants.

*Hartley G. Pelletier,* for special guardian for the infant appellants Jennie Brown and others.

*J. J. Karbry O' Kennedy,* for the respondents.

LAUGHLIN, J.:

The testatrix was a maiden lady about eighty years of age at the time of the execution of the will, and her nearest next of kin were second cousins of the half-blood. She kept house alone, doing her own housework to a very large extent. Upwards of twelve years before the will was made, one Thomas

A. Hart, a young man, on the recommendation of her minister, went to live with her as a boarder. He afterwards attended college but continued to make his home with her until her death. By the will of September 23, 1916, she gave $1,000 to Dr. O'Kennedy, her attorney, and left the rest of her estate to Hart. On the 9th of July, 1909, she made a prior will under which she left $1,000 to each of ten relatives and a like amount to Hart and to Dr. O'Kennedy, and $500 each to three friends; to two other friends she also gave the family pictures, family jewelry and certain like property, and the remainder of her estate she gave to Dr. O'Kennedy. On the objections to the probate by the appellants, issues were framed for a jury trial. At the close of the evidence the surrogate directed a verdict in favor of the proponent on the issues with respect to the due execution of the will, to whether its execution was procured by fraud, deceit or undue influence, and with respect to whether the testatrix was free from restraint. The decedent died on the 5th day of July, 1918. She had delivered both wills to her attorney who kept them in his safe at his office in the city of New York. On the 3d day of July, 1918, a letter was written to her attorney by her direction on a small piece of paper and signed by her, as follows:

"*July* 3, 1918.

"Dr. O'KENNEDY:

"DEAR FRIEND.— Please destroy the Will I made in favor of Thomas Hart.

"MARGARET McGILL."

Indorsements on back:

"AGNES THOMSON
"BESSIE GILMORE."

Agnes Thomson and Bessie Gilmore wrote their names on the back of the piece of paper, and it was then sent by her direction to her attorney and delivered to him the next morning by the husband of said Agnes Thomson at a hospital where the testatrix knew he then was as a patient, but she understood that he was about to be discharged therefrom. At the time of its receipt by Dr. O'Kennedy it was read to him, for it appears he had been forbidden to use his eyes. It further appears that he was not released from the hospital until

twelve hours after her death, and that then he went home and remained confined to the house for a further period of five weeks on account of his eyes. Dr. O'Kennedy learned of her death before leaving the hospital and took no action on her request contained in the letter. Evidence was given on the part of the contestants that the testatrix signed her name to the letter in the presence of the two witnesses, acknowledged it and requested them to sign as witnesses. The court directed the jury to find in the affirmative on the issues as to whether the testatrix signed the letter at the end thereof in the presence of attesting witnesses or acknowledged to them that she had signed it, and left to the jury the issues as to whether the two witnesses indorsed their names thereon at her request, as to whether the testatrix declared the contents of the paper to the attesting witnesses and that the paper writing was her act and deed, and as to whether she was then of sound mind and memory and free from restraint, and the jury answered all of those issues in the affirmative. They answered in the negative an issue as to whether the execution of the instrument of July 3, 1918, was caused or procured by the fraud or undue influence of any person. The surrogate thereupon admitted the will to probate.

The claims of the contestants that the execution of the will was procured by fraud or undue influence and that she was under restraint, rest on suspicion and conjecture. There is no evidence tending to support any of those contentions or requiring the submission of the issues with respect thereto to the jury. The decedent was not on terms of intimacy with any of her relatives, and under the circumstances it was natural that she should leave the bulk of her estate to Hart who had lived with her and been her companion for such a long period of time. There is evidence tending to show that there were disagreements between them and that at times he was rude to her and did not treat her with due consideration, but for the most part this was after she made the will. There is no evidence to show that she was not in the full possession of her faculties or that she was under restraint when she made the will, which was prepared by her attorney who had been her trusted friend for many years and had prepared the former will under which he would have received many times

First Department, March, 1920.            [Vol. 191.

the amount given to him by the last will.   The only question requiring serious consideration is that arising on the execution of the writing in the form of a letter to Dr. O'Kennedy on the 3d day of July, 1918.   The findings of the jury, which are amply supported by the evidence, are that the instrument was executed in the manner required by the statute for the revocation of a will as provided by section 34 of the Decedent Estate Law, which so far as is material is as follows: " No will in writing, except in the cases hereinafter mentioned, nor any part thereof, shall be revoked, or altered, otherwise than by some other will in writing, or some other writing of the testator, declaring such revocation or alteration, and executed with the same formalities with which the will itself was required by law to be executed;   *   *   *."

The point presented is whether the writing, in and of itself, constituted a declaration of revocation of the will *ipso facto* within the statute, or whether it was only intended by the testatrix that the will should be revoked when it should be destroyed by Dr. O'Kennedy as she requested or on the receipt by him of the communication in time to afford him an opportunity to destroy it before his agency was terminated by her death, in which circumstance it might well be argued that it was his duty to destroy it and that, therefore, it would be deemed destroyed.   That the testatrix intended to leave him no discretion with respect to destroying the will appears by the instrument itself and by other evidence indicating solicitude on her part as to whether he had received the communication, and declaration by her expressing the hope that he had and stating that he would be glad to receive it for he knew she did not want the will to stand.   That she believed that she had taken steps that would result in the destruction of the will is also shown by testimony with respect to declarations made by her after sending the communication to the effect that she felt happy and that she had done what she had wanted to do and what she had intended to do; and evidence that she remained happy from that time until her death.   There is testimony to the effect that on the morning of July third, before the letter was prepared or signed, the testatrix inquired as to whether Dr. O'Kennedy had come out of the hospital and directed that he be sent to her room if he should call and

stated that if he did not come she wanted to send him a note and that she made a like inquiry about half past one o'clock in the afternoon of that day and then said that she thought he was still in the hospital and that she would send him a note. The note was written that afternoon between two-thirty and three o'clock.  She stated to the witnesses who indorsed their names on the letter that she was going to send Dr. O'Kennedy a note to destroy the will leaving everything to Hart and thereupon she directed that blank paper be procured and at her request the note was written and thereupon she read it and the witnesses read it and it was signed by all of them, and she then handed the paper to Mrs. Thomson, one of the witnesses, saying, " You see that Dr. O'Kennedy gets this; I know he will be glad to get it."  Although the intent of the testatrix to revoke the will is clear both from the letter and from the testimony, yet it is equally clear that she did not suppose that the signing of the letter by her and the witnesses in the manner stated constituted a present revocation. It may well be that this was owing to the fact that she supposed it would be necessary to have the will destroyed, but nevertheless she did not understand that the will was revoked upon the execution of the paper by her and the witnesses, and it is quite clear that her understanding was that it would be necessary to have it actually destroyed.  If she did not understand that these acts in and of themselves constituted a revocation it is difficult for me to see how it may be said that when she signed the paper and had it so witnessed she intended that it should constitute a revocation of her will.  There is, therefore, I think, both an absence of a present intention that the paper should constitute a revocation in and of itself and a failure to employ language expressing such an intention. If she had dispatched a messenger to Dr. O'Kennedy with this note and had changed her mind and countermanded it by telephone or telegraph or otherwise before he received it and acted upon it, and the question presented were whether in such circumstances the will was revoked I think that we would be obliged to hold that it was not.  I am, therefore, of opinion that the instrument should be construed as it is written, and that it merely constituted authority for the destruction of the

will and not a revocation thereof.   The only case cited that appears to be in point on the facts is that of *Tynan* v. *Paschal* (27 Tex. 286) in which a letter was sent by the testator directing an attorney in fact to destroy his will.   Although executed in proper form to constitute a present revocation of the will if so intended the writing was construed to be a mere direction and authority to the attorney to destroy it and not as a revocation of the will *ipso facto*.   If instead of sending this note to Dr. O'Kennedy she had declared in writing over her signature that she revoked the will and acknowledged her signature, declared the effect of the instrument, and asked the witnesses to sign, and they did sign, there can be no doubt but that the statute would have been complied with and the will would have been effectively revoked.   As mere authority to destroy the will there was no necessity for having the execution of the paper witnessed, but doubtless she thought there was.   I am of opinion, therefore, that the learned surrogate was right in holding that the execution of this paper did not constitute a revocation of the will.

It follows that the decree should be affirmed, with costs.

DOWLING and PHILBIN, JJ., concur; CLARKE, P. J., and MERRELL, J., dissent.

CLARKE, P. J. (dissenting):

I dissent.   Under the clear evidence of intent, I think the paper writing satisfied the statute; that the instruction to destroy was equivalent to destruction and hence admission to probate was error.

MERRELL, J., concurs.

Decree affirmed, with costs.