In the Matter of Proving the Will of MARGARET McGILL, Deceased.

ISABELLA PATTERSON et al., Appellants; J. J. KARBRY O'KENNEDY et al., Respondents.

**Will — probate — revocation of a will must be consummated by some of the acts specified in the statute — when writing directing destruction of will not sufficient to constitute a revocation.**

1. To revoke a will it is necessary not only that there should be an intent to revoke the will, but the intent must be consummated by some of the acts specified in the statute (Decedent Estate Law [Cons. Laws, ch. 13], § 34), or by the execution of an instrument " declaring such revocation." It is not within the legitimate power of the courts to dispense with the requirements of the statute in the execution or revocation of wills and accept even a definite intention to perform the prescribed act in connection therewith for the act itself.

2. Decedent executed a will and left the same with the executor named therein. Findings sustained by the evidence show that two days before her death she directed the writing of a note to her said executor, which she signed in the presence of two witnesses, who at her request affixed their names as witnesses thereto, reading as follows:
" Dr. O'KENNEDY:                                        " July 3, 1918.
" DEAR FRIEND.— Please destroy the Will I made in favor of Thomas Hart.          .          " MARGARET McGILL."
On the back of the note were the signatures of the witnesses. This note was delivered to the executor, who had the will in his possession, before the death of the testatrix. The will was not destroyed but was, after decedent's death, offered for probate. *Held*, that the execution of the paper did not in and of itself constitute an absolute and unqualified revocation of the will and, in the absence of evidence that she intended the act of signing to be in itself a complete revocation, the will was properly admitted to probate.
*Matter of McGill*, 191 App. Div. 76, affirmed.

(Argued June 4, 1920; decided July 7, 1920.)

APPEAL from an order of the Appellate Division of the Supreme Court in the first judicial department, entered March 5, 1920, which affirmed a decree of the Bronx County Surrogate's Court admitting to probate a

paper propounded as the last will and testament of Margaret McGill, deceased.

The facts, so far as material, are stated in the opinion.

*Ward V. Tolbert* and *John Ewen* for appellants. The instrument dated July 3, 1918, operated as a revocation of the will offered for probate. (*Brook* v. *Ward*, Dyer, 310; *Doe d. Reed* v. *Harris*, 6 Ad. & Ell. 209; *Bates* v. *Hacking*, 68 Atl. Rep. 622; *Matter of Alger*, 38 Misc. Rep. 146; *Matter of Hausen*, 72 Misc. Rep. 610; *Phillips* v. *Davies*, 92 N. Y. 199; *Goods* v. *Gosling*, L. R. 11 P. & D. 79; *Wolcott* v. *Ochterlony*, 1 Curt. Eccl. 580; *Matter of Goods of Durance*, 2 P. D. 406; *Matter of Eyre*, 2 Ir. R. 540.) In executing the paper dated July 3, 1918, the decedent intended to revoke her will in favor of Hart. (*Waterman* v. *Whitney*, 11 N. Y. 157; *Matter of Pulis*, 220 N. Y. 201.)

*J. J. Karbry O' Kennedy* for respondents. The paper writing dated July 3, 1918, was insufficient in law to effect a cancellation or revocation of the will offered herein for probate. (*Matter of Evans*, 113 App. Div. 373; *Matter of Hughes*, 61 Misc. Rep. 207; *Matter of Steiner*, 89 Misc. Rep. 66; *Lovell* v. *Quitman*, 88 N. Y. 377; *Burnham* v. *Comfort*, 108 N. Y. 535; *Delafield* v. *Parish*, 25 N. Y. 9; *Matter of Backers*, 49 App. Div. 410; *Tynan* v. *Paschal*, 27 Tex. 286; *Doe d. Reed* v. *Harris*, 6 Ad. & Ell. 209; *Doe* v. *Perkes*, 3 B. & Ald. 489; Jarman on Wills [6th ed.], 149.)

CHASE, J. Margaret McGill died July 5, 1918, at the age of eighty-two years, unmarried, and without leaving descendant, father, mother, brother, sister, nephew or niece her surviving. She left her surviving thirteen second cousins of the half blood, and four third cousins of the half blood the only persons interested as heirs at law or next of kin in her property, which real and personal, amounted to about $25,000.

She executed a will on September 23, 1916, by which she gave and bequeathed to J. J. Karbry O'Kennedy, her friend and executor named therein, $1,000, and gave, devised and bequeathed to Thomas A. Hart the rest and residue of her estate. She had previously and on July 9, 1909, executed a will by which she gave and bequeathed to said Hart and O'Kennedy each the sum of $1,000 and small legacies to other persons including some of her second cousins, altogether aggregating $13,500, and to said O'Kennedy, who was named as executor therein, the rest and residue of her estate. O'Kennedy is a lawyer and drew both of the wills for the testatrix. The residuary legatee named in the will of 1916 is a young man who had boarded with Miss McGill for twelve or thirteen years, commencing about the time he left a preparatory school for college and continuing until her death, except during the time when he was in college.

On June 30, 1918, Miss McGill became ill and died as stated, July 5, 1918. On July 2, 1918, Agnes Thompson, one of her second cousins, called on Miss McGill, and while she was there, Bessie, a maid in the house, told her that Miss McGill had made a will in favor of Hart. She went to her home but returned to and remained with Miss McGill until she died. On July 3, 1918, two days before the death of Miss McGill, she told Mrs. Thompson to write a note to O'Kennedy to destroy the will leaving everything to Hart. Mrs. Thompson wrote the note and Miss McGill signed it in the presence of Mrs. Thompson and the maid. The following is a copy of the note:

" Dr. O'KENNEDY: " *July* 3, 1918.

" DEAR FRIEND.— Please destroy the Will I made in favor of Thomas Hart.

" MARGARET McGILL."

On the back of the note are the signatures of Agnes Thompson and Bessie Gilmore. Each testified that they

signed their names thereon at the request of Miss McGill and that they put their signatures on the back of the paper because there was not room for their signatures on the face of the paper.

Agnes Thompson testified that after signing the paper Miss McGill expressed her satisfaction by saying, " I am so glad that is done." Bessie Gilmore testified that Miss McGill said, " I feel so happy now. * * * I have just done what I wanted to do, what I intended to do."

Miss McGill told Mrs. Thompson to deliver the paper to O'Kennedy. It was delivered to him on July fourth, at a hospital where he was a patient. When it was delivered to him, O'Kennedy said that the will was in his safe in his office. He was not discharged from the hospital nor was anything done by him in regard to the will before Miss McGill's death which occurred at three o'clock the next morning.

The will of 1916 was offered for probate. Objections thereto were filed by some of the heirs at law and next of kin. On the demand of the contestants issues were framed for trial by a jury as follows:

I. Did Margaret McGill, the testatrix, subscribe the paper offered for probate at the end thereof in the presence of the attesting witnesses or acknowledge to each of them that such subscription appearing on said paper had been made by her?

II. At the time of making such subscription or acknowledgment did the said Margaret McGill declare to the attesting witnesses that the paper offered for probate was her last will and testament?

III. Were there at least two attesting witnesses, each of whom signed his or her name at the end of said paper at the request of said Margaret McGill?

IV. At the time of the execution of the said paper was the said Margaret McGill free from restraint?

V. Was the execution of the said paper by the said Margaret McGill caused or procured by fraud, deceit or

undue influence practiced upon the decedent by any person or persons?

VI. Did Margaret McGill, deceased, subscribe the paper writing dated July 3, 1918, at the end thereof in the presence of the attesting witnesses or acknowledge to each of them that such subscription appearing on said paper had been made by her?

VII. At the time of making such subscription or acknowledgment to the paper dated July 3, 1918, did the said Margaret McGill declare the contents of said paper to the attesting witnesses, and that the paper writing was her act and deed?

VIII. Were there at least two attesting witnesses, each of whom subscribed his or her name at the end of said paper writing dated July 3, 1918, at the request of said Margaret McGill?

IX. At the time of the execution of the paper dated July 3, 1918, was the said Margaret McGill of sound mind and memory?

X. At the time of the execution of said paper dated July 3, 1918, was the said Margaret McGill free from restraint?

XI. Was the execution of the said paper dated July 3, 1918, by the said Margaret McGill caused or procured by fraud, deceit, or undue influence of any person or persons?

The issues were tried, and at the close of the trial the jury was directed to answer questions I, II, III, IV, VI, VIII and IX in the affirmative and question V in the negative.

The jury returned a verdict on said questions as directed by the court and answered questions VII and X in the affirmative and question XI in the negative. The surrogate rendered his decision and entered a decree accordingly and the will was admitted to probate and the objections thereto dismissed. An appeal was taken therefrom to the Appellate Division where the decree

was affirmed by a divided court. (*Matter of McGill*, 191 App. Div. 76.) The appeal comes to this court from a decree of affirmance entered on the order of the Appellate Division.

No error was committed by the surrogate in directing the jury to answer questions in the affirmative and negative as stated. (*Matter of Kennedy*, 229 N. Y. 567, affg. 190 App. Div. 896 and 106 Misc. Rep. 216.) The evidence was not sufficient to sustain a contrary finding by the jury to any of said questions. There is evidence to sustain the finding of the jury as to the other questions answered by it.

Every last will and testament of real or personal property, or both, shall be executed and attested as provided by statute. (Decedent Estate Law [Cons. Laws, ch. 13], § 21.) To revoke or cancel a written will, compliance must be had with the statute. (Decedent Estate Law, § 34.) Said section 34 is as follows: " No will in writing, except in the cases hereinafter mentioned, nor any part thereof, shall be revoked, or altered, otherwise than by some other will in writing, or some other writing of the testator, declaring such revocation or alteration, and executed with the same formalities with which the will itself was required by law to be executed; or unless such will be burnt, torn, canceled, obliterated or destroyed, with the intent and for the purpose of revoking the same, by the testator himself, or by another person in his presence, by his direction and consent; and when so done by another person, the direction and consent of the testator; and the fact of such injury or destruction, shall be proved by at least two witnesses."

Concededly the will of September twenty-third was never burned, torn, canceled, obliterated or destroyed by Miss McGill or by any other person in her behalf and in her presence. At the time of the execution of the paper of July third the will was in a safe in the office of O'Kennedy and remained there until after her death.

The question for our consideration resolves itself into the narrow one of determining whether the execution of the paper of July third was in and of itself an absolute and unqualified revocation of the will of 1916.

The words used by Miss McGill in the paper of July third are not ambiguous except perhaps as to whether she intended to limit the authority of O'Kennedy to a destruction of the will so far as it was " made in favor of Thomas Hart." The testimony relating to its execution and the statements made by her in connection therewith are not contradicted. Her intent in executing the paper, at least so far as such intent is now before us, must be determined by the court as a matter of law.

To revoke a will it is necessary not only that there should be an intent to revoke the will, but the intent must be consummated by some of the acts specified in the statute, or by the execution of an instrument " declaring such revocation." The difficulty with the appellant's position is that the paper writing does not itself *declare the revocation.* It does not declare *an intention to revoke* the will except through its destruction, either wholly or so far as Hart is concerned, by O'Kennedy.

A revocation to be effective must be made pursuant to the statute. (*Lovell* v. *Quitman,* 88 N. Y. 377; *Burnham* v. *Comfort,* 108 N. Y. 535; *Delafield* v. *Parish,* 25 N. Y. 9; *Matter of Evans,* 113 App. Div. 373.) It is not within the legitimate power of the courts to dispense with the requirements of statute in the execution or revocation of wills and accept even a definite intention to perform the prescribed act in connection therewith or the act itself. (*Hoitt* v. *Hoitt,* 63 N. H. 475.)

It is held in *Tynan* v. *Paschal* (27 Texas, 286) that a letter of a decedent to his attorney in fact directing him to destroy his will does not operate *ipso facto* as an immediate revocation of it.

The English decisions relating to the subject under consideration are based upon an amended statute that

differs somewhat from a prior English statute and from our statute and such decisions are not convincing upon a consideration of our statute and the facts before us.

It is urged that Miss McGill intended that her will should be destroyed. That may be admitted. Such intention to destroy the will is not a revocation. Her words do not indicate an intention to revoke the will at once or apart from its revocation through a destruction of the will by O'Kennedy. It is further urged that a construction of the paper by which it is held that it does not in itself constitute a revocation is technical and illiberal. The statute relating to the revocation of a will is specific and unqualified. So is the statute regarding the execution of a will. Both are intended for literal compliance. The reason that exists for requiring that a will to be effective must be executed with certain formalities exists to an equal extent for requiring that an instrument revoking a will to be effective must be executed with like formalities. Formalities in the making and in the revocation of a will are necessary to prevent mistake, misapprehension and fraud. The interests of the people are best subserved by sustaining the statute quoted as it is written.

The ultimate intent of Miss McGill to revoke the will is not sufficient. To make her intent effective it would be necessary to find as a fact that she intended that the act of signing the paper was in itself a complete revocation of her will. Such a finding would not have any evidence to sustain it.

The order should be affirmed, with costs payable out of the estate.

HISCOCK, Ch. J., COLLIN, CARDOZO, POUND, CRANE and ANDREWS, JJ., concur.

Order affirmed.