In the Matter of the Probate of the Will of ESTHER H. TREMAIN, Deceased.
HENRY H. JACKSON et al., Appellants; BANK OF NEW YORK AND TRUST COMPANY, Respondent.

Argued February 27, 1940; decided April 16, 1940.

*Ralph S. Kent, S. Y. Austin, Jr.,* and *Alvaro J. Adams* for appellants. Section 34 of the Decedent Estate Law (Cons. Laws, ch. 13) does not require the cancellation marks to encompass the whole will to be expressive of intent, or to affect such a vital part of it that presumptively

the will is revoked. (*Dan* v. *Brown*, 4 Cow. 483; *Ely* v. *Megie*, 219 N. Y. 112; *Lovell* v. *Quitman*, 88 N. Y. 377; *Quinn* v. *Quinn*, 1 Thompson & Cook, 437; *Matter of Curtis*, 135 App. Div. 745; *Matter of Bissonnette*, 127 Misc. Rep. 215; 217 App. Div. 809.)

*Robert B. Watts* for respondent. The marks on the will do not constitute an act of revocation within section 34 of the Decedent Estate Law. (*Jackson* v. *Halloway*, 7 Johns. 397; *Dan* v. *Brown*, 4 Cow. 483; *Jackson* v. *Kniffen*, 2 Johns. 31; *Waterman* v. *Whitney*, 11 N. Y. 157; *Matter of McGill*, 229 N. Y. 405; *Matter of Evans*, 113 App. Div. 373; *Matter of Philp*, 64 Hun, 635; *Lovell* v. *Quitman*, 88 N. Y. 377; *Quinn* v. *Quinn*, 1 Thompson & Cook, 437; *Matter of Crawford*, 80 Misc. Rep. 615; *Matter of Ridgway*, 141 Misc. Rep. 582; *Casey* v. *Hogan*, 344 Ill. 208.)

LEWIS, J. The will of Esther Hull Tremain has been admitted to probate by a Surrogate's decree which granted the proponent's motion for judgment on the pleadings and dismissed the contestants' objection that the alleged will had been revoked by cancellation. Following the unanimous affirmance by the Appellate Division of that decree, we have granted leave to appeal and now review the record upon which rests the ruling that the presence of certain marks, lines and writings, concededly made by the testatrix in ink upon four of the eleven pages of the will, are insufficient in law to constitute an act of revocation within section 34 of the Decedent Estate Law (Cons. Laws, ch. 13).

As an aid to construction we shall consider briefly the statutory history which preceded the enactment in 1829 of the law by which we are to test the present record which the appellants claim affords ample proof of revocation. Under the early common law of England a written will could be set aside by parol proof of the testator's intention to revoke. There came a time, however, when the administration of that rule in probate proceedings was fraught with perjury and fraud, so much so that, in the course of a proceeding to revoke a written will by oral proof of a

nuncupative will Lord Chancellor NOTTINGHAM stated: " I hope to see one day a law, that no written will should be revoked but by writing." (*Cole* v. *Mordaunt*, cited in *Matthews* v. *Warner*, 4 Vesey Jr. pp. 195, 196 [note a]. See, also, *Prince* v. *Hazleton*, 20 Johns. 502, 513; *Ash* v. *Abdy*, 3 Swanst. 664; 17 Michigan Law Review, p. 331 *et seq.*) This comment led to the adoption in England in 1677 of the following statute (29 Charles II, ch. 3): " VI. And moreover no devise in writing of lands, tenements or hereditaments, nor any clause thereof, shall at any time after the said four and twentieth day of June be revocable, otherwise than by some other will or codicil in writing, or other writing declaring the same, or by burning, cancelling, tearing or obliterating the same by the testator himself, or in his presence and by his directions and consent; (2) but all devises and bequests of lands and tenements shall remain and continue in force, until the same be burnt, cancelled, torn or obliterated by the testator, or his directions, in manner aforesaid, or unless the same be altered by some other will or codicil in writing or other writing of the devisor, signed in the presence of three or four witnesses, declaring the same; any former law or usage to the contrary notwithstanding."

Thereafter, in 1787, the Legislature of New York incorporated in our statutory law similar requirements for proof of revocation. (Laws of 1787, ch. 47; 1 Greenleaf, Laws of New York, [1792], p. 387, ch. 47, § III.) The text of the law was subjected to change in 1801 (Laws 1801, ch. 9, § 3, p. 9) and, substantially as changed, this law was placed in Revised Laws of 1813. (See Laws 1813, ch. 23, § 3, p. 365.) Up to this time the statutes made no mention of the testator's intent to revoke. Meantime the courts had interpreted this law as requiring that the physical acts prescribed by the statute be done *animo revocandi*. (*Jackson* v. *Holloway*, 7 Johns. 394, 399; *Dan* v. *Brown*, 4 Cow, 483, 490.) In 1829 this judicial interpretation was given statutory sanction by the inclusion of the words " with the intent and for the purpose of revoking the same." (Rev. Stat.

[1st ed., 1829], vol. 2, part 2, ch. 6, tit. 1, art. 3rd, § 42, p. 64.) In fact, the change was made for the express purpose of sanctioning the interpretation by the court in *Dan* v. *Brown* (*supra*). (See Edmonds Revisers' Reports and notes 1863, vol. 5 of New York Statutes at Large, part 2, ch. 6, art. 3, § 49 [same as R. S. § 42].)

The language of the statute of 1829 has never been changed and appears today as section 34 of the Decedent Estate Law. It provides:

" § 34. Revocation and cancellation of written wills. No will in writing, except in the cases hereinafter mentioned, nor any part thereof, shall be revoked, or altered, otherwise than by some other will in writing, or some other writing of the testator, declaring such revocation or alteration, and executed with the same formalities with which the will itself was required by law to be executed; or unless such will be burnt, torn, canceled, obliterated or destroyed, with the intent and for the purpose of revoking the same, by the testator himself, or by another person in his presence, by his direction and consent; and when so done by another person, the direction and consent of the testator, and the fact of such injury or destruction, shall be proved by at least two witnesses."

We are to apply this statute in determining upon the record at hand whether there is evidence legally sufficient to establish revocation of the alleged will offered for probate in this proceeding. It is a document of more than three thousand typewritten words covering eleven pages and is manifestly the product of careful draftsmanship. Concededly, seven of its pages — including the last page upon which appear the signature of the testatrix and the attestation clause with the signatures of the three witnesses — are free from writings, marks or interlineations upon which a claim of revocation by cancellation could be based. Accordingly, if there is proof of acts sufficient in law to constitute revocation by cancellation it must be found on the four remaining pages.

On the first page is the paragraph numbered " Fourth," by which the testator devised two apartment houses in New York city and a " Farm at Stormville, Dutchess County, New York, known as the Old Homestead." Following the above-quoted description of the Stormville farm property the testator has written in longhand " one mile from Stormville my Mother's Home."

In the left margin of the sixth page opposite the " Eighth " paragraph, which creates from the residuary estate six charitable trusts, appears the notation, " I don't quite understand this."

In the left margin of the tenth page opposite subdivision " (e) " of the " Twelfth " paragraph, which grants to the testamentary trustee certain discretionary powers in dealing with funds of the trust, appears a similar notation, " Don't understand."

The only remaining marks and interlineations upon the will are those appearing on the fifth page, as follows:

The " Sixth " paragraph contains a bequest under subdivision " (d)," " To Anna Armstrong, of Fayetteville, New York, the sum of Two thousand dollars ($2,000)." Opposite this subdivision and beginning in the left margin is a bifurcated line so drawn that it does not touch the text of the will at any point but encloses within its fork the character " (d)."

Subdivision " (g) " contains a bequest " To my friend, Mollie Rose, wife of Hudson P. Rose, of New York City, my necklace composed of sapphires, pearls, and diamonds." To this sentence the testatrix has added the words " & Two Thousand."

Subdivision " (i) " bequeaths $2,000 to John M. Thompson of Yonkers, and subdivision " (j) " bequeaths $2,000 to his sister Sadie Thompson. Around the left end of these two subdivisions and extending slightly within the left margin is a vertical bracket-shaped line which brackets the two subdivisions but does not touch the text of either.

Finally we reach subdivision " (k)," which provides a bequest by the testatrix: " To my maid, Augusta Dean,

the sum of Five hundred dollars ($500) if she is still in my employ at the time of my death." Through the words "Five hundred" two horizontal lines have been drawn and above them have been written the words "Five Thousand." Through the figures "$500" a line has been drawn, above which has been written the words "Five Thousand."

Assuming, as we must, the truth of the contestants' allegation that the testatrix intended to revoke her will, we cannot say upon the present record that there is evidence of compliance with the requirements of section 34 of the Decedent Estate Law to accomplish that end. Had the appellants been permitted to give proof of oral statements by the testatrix of her intent to destroy the will, the statute was not satisfied by proof of the marks and interlineations upon the will itself to which reference has been made. We have seen that parol evidence of a testator's intent to revoke a will was sufficient at common law only until it was discovered how easily, under such a rule, perjury and fraud could be employed to pervert justice. Then came statutory requirements in England and in this State which foreshadowed those which we must now apply and under which revocation cannot be proved exclusively by the testator's statement *animo revocandi*. Intent alone will not suffice. It must be "consummated by some of the acts specified in the statute, or by the execution of an instrument 'declaring such revocation.'" (*Matter of McGill*, 229 N. Y. 405, 411.)

In the absence of proof in the present record of some writing by the testatrix, properly attested, declaring her intention to revoke the will, proof of revocation requires evidence of some physical act by the testatrix or at her direction, in connection with the will itself, such as burning, tearing, canceling, obliterating or destroying the instrument. The marks, lines and writing upon the will before us do not satisfy the requirements of the statute as interpreted by this court in *Lovell* v. *Quitman* (88 N. Y. 377). Construing in that case the statute which we are now considering, this court ruled (p. 379):

" There is [in the statute] language of prohibition, but it is so qualified as to amount to permission to revoke or alter a will, or any part thereof, by some other will in writing, or some other writing of the testator declaring such revocation or alteration; or by burning, tearing, canceling, obliterating or destroying the will, ' for the purpose of revoking the same.' Now, by the first phrase, the repentant testator is required to write out the proposed alteration, select his witnesses and make to them an acknowledgment or declaration that the act is his; and, so far, the language permits but one inference or construction; that that act becomes effectual whether it relates to the whole will, or some portion only of the will.

" The second clause requires no such construction. The words ' or any part thereof ' are omitted. The ' will ' itself is to be burnt, torn, canceled, obliterated or destroyed, not with an intent or purpose of ' altering,' but, as the statute says, ' with the intent and for the purpose of revoking the same.' "

Again (at p. 381), it was said: " * * * when we find in the first clause that the will, or any part thereof, can be altered by a writing only when duly attested, and in the second clause the words ' or any part thereof ' omitted, we are bound to give effect to the specific words actually used, and say that no obliteration can be effective as to part, unless it altogether destroys the whole will. We have no power to interpolate other words." (See, also, *Matter of McGill, supra,* pp. 411, 412; *Matter of Akers,* 74 App. Div. 461; affd., 173 N. Y. 620.)

In the case at bar the acts of the testatrix do not amount to a cancellation. There is here nothing more than an attempted alteration which the statute requires shall be " executed with the same formalities with which the will itself was required by law to be executed." Concededly the testatrix has crossed out three words of the entire will and has interlined new matter. Being unsigned and unwitnessed, however, no effect can be given to the attempted change. (Cf. " Dependent Relative Revoca-

tion," by Joseph Warren, 33 Harvard Law Rev. 337, 338; Thompson on Wills [2d ed.], § 160, p. 209.)

The order should be affirmed, with costs to the respondent payable out of the estate.

LEHMAN, Ch. J., LOUGHRAN, FINCH, RIPPEY, SEARS and CONWAY, JJ., concur.

Order affirmed, etc.