OPINION OF THE COURT
Chief Judge Cooke.
Presented for review is the question whether a "reciprocal” will is revoked by a general release which discharges the testator’s contractual obligation to execute such a will. An ancillary issue concerns whether a testamentary disposition may be impliedly abrogated by a document which does not comply with the formalities prescribed by EPTL 3-4.1.
 A contract obligating an individual to execute a reciprocal will is analytically distinct from the will itself, and we hold that a release or discharge of the contractual duty, *518 without more, does not work a revocation of the will. In a similar vein, an instrument which does not satisfy the strictures of EPTL 3-4.1 may not, at least in the circumstances of the present case, be deemed to revoke by implication an otherwise valid bequest.
Earl J. Coffed, Jr., the decedent, and Bessie M. Waley were married in July, 1971. As a result of previous marriages to others, Bessie had a son, Edwin Waley, Jr., while Earl had three children. Shortly after their marriage, Earl and Bessie entered into a contract whereby they agreed to execute reciprocal wills which would pass the estate assets of the first deceased to the survivor. The wills also were to provide for disposition of an equal portion of the estates to each of the four children upon the death of the survivor or the simultaneous death of both husband and wife. Finally, the parties agreed not to "revoke or change or in any way modify the will as reciprocally drawn”.
Unhappily, the bonds of matrimony were severed late in 1973 when Bessie obtained a default divorce decree. Some three months later, in the course of effecting a modification to the decree, the parties mutually released all claims of any nature which they might have against each other.
Earl Coffed, Jr., died on May 28, 1976. His will, which had remained unchanged since he executed it pursuant to the contract in 1971, was offered for probate by Edwin Waley, Jr. Bavid Coffed, one of Earl’s three children, filed objections, and this proceeding ensued.
The Surrogate, relying upon the presumed intention of Earl Coffed, ruled that the will should not be probated. Moreover, the Surrogate concluded that EPTL 5-1.4, which upon a divorce automatically revokes a prior testamentary provision for a spouse, was inapplicable to the present circumstances. A unanimous Appellate Bivision reversed the decree of the Surrogate. We now affirm the order of the Appellate Bivision.
Reciprocal and joint wills, which are essentially a species of the more inclusive category of contracts to make testamentary provisions, are not unfamiliar to our law (see 9B Rohan, NY Civ Prac, par 13-2.1 [8]). So long as certain prerequisites are met, a contract requiring the execution of a joint or reciprocal will is legally enforceable (see, generally, Rich v Mottek, 11 NY2d 90; EPTL 13-2.1). Upon the death of a party who has complied with the contractual provisions, the agreement is no longer executory and will be specifically enforced
*519 in equity (see, e.g., Lally v Cronen, 247 NY 58, 62-63; Rastetter v Hoenninger, 214 NY 66, 71). Absent such an obligation, of course, and subject to applicable statutory and decisional law, an individual may make or revoke testamentary provisions at his pleasure (see, e.g., Lally v Cronen, supra, at p 62).
Conceptually, the contract to make a testamentary provision is separate and distinct from the will itself. While the contract might be enforceable in equity, from a technical standpoint it has no effect upon the will’s status as a legal instrument. Thus, this court has previously held that a document purporting to be a will may not be denied probate merely because the testator "bound himself to a different disposition of [his] property by contract” (Matter of Higgins, 264 NY 226, 229; see, also, Matter of Davis, 182 NY 468).
It follows that the release of a contractual duty requiring a particular testamentary disposition, by itself, has no impact upon an existing will. True, the parties are no longer bound to comply with the agreement’s strictures, and equity will no longer enforce the disposition called for by the contract. But the existing wills, whether they are consistent with the contractual requirements or not, subsist and remain unaffected.
 To reach a contrary conclusion would be to undermine the rigorous, but necessary, statutory provisions relating to revocation of wills. With few exceptions not here relevant, the exclusive mechanism for revocation of a testamentary instrument is contained in EPTL 3-4.1. That section wisely requires that a revocatory instrument be executed with the same formalities as those needed to make a valid will. A less stringent provision would open the door to the dual evils of fraud and perjury (cf. Matter of Tremain, 282 NY 485, 486-487, 490), and perhaps fail to impress upon the mind of the testator the solemnity of the occasion. Consequently, the conclusion is inescapable that the general release signed by decedent, which concededly does not satisfy EPTL 3-4.1, did not work a revocation of the existing reciprocal will.
Nor was decedent’s will impliedly revoked by virtue of the principle enunciated in Matter of Hollister (18 NY2d 281). In Hollister, this court, construing section 40 of the Decedent Estate Law,[1] held that a subsequent separation agreement *520 which is "wholly inconsistent” with a testamentary disposition to a spouse works a revocation of that disposition (Matter of Hollister, supra, at pp 286-287). Strictly speaking, that precise holding is inapplicable to the present case, inasmuch as the bequest to the wife has been automatically revoked by divorce.[2] Moreover, the boilerplate language in the release executed by this decedent does not approach the more specific language found "wholly inconsistent” in Hollister (see 18 NY2d, at p 286).
But all of this assumes that the rule stated in Hollister continues to represent the law of this State. Although we do not today decide the question, we note that the viability of that case may be in doubt. The specific problem addressed in Hollister, concerning the effect of a subsequent separation or divorce upon an existing disposition to a spouse, has since become a topic of legislative consideration and action (see EPTL 5-1.4; Temporary State Commission on the Modernization, Revision and Simplification of the Law of Estates, Report No. 8.25A, NY Legis Doc, 1966, No. 19, pp 702-804, esp p 782). In view of this legislative action, further development in the area might well be precluded. Because Hollister is clearly distinguishable from the present case, however, we need not now grapple with this question.
Accordingly, the order of the Appellate Division should be affirmed, with costs to all parties appearing separately payable out of the estate.
Judges Jasen, Gabrielli, Jones, Wachtler and Fuchsberg concur with Chief Judge Cooke.
Order affirmed, etc.

. EPTL 5-1.4 provides: "If, after executing a will, the testator is divorced * * * the divorce * * * revokes any disposition or appointment of property made by the will to the former spouse.” We find no obstacle to the application of this provision here. This section is "new” and effects a substantial change in New York law in respect to revocation of wills (L 1966, ch 952, eff Sept. 1, 1967, as amd by L 1969, ch 805, eff Sept. 1, 1969; see Hoffman, Practice Commentary, McKinney’s Cons Laws of NY, Book 17B, § 5-1.4, p 727).

. Section 40 of the Decedent Estate Law was incorporated into the EPTL and is now contained in EPTL 3-4.3. We note that the language of the EPTL provision differs from that of its predecessor, but need not reach the question whether the new wording has altered the substantive effect of the provision.