*953 OPINION OF THE COURT
Lee L. Holzman, J.
The issue presented by the proponents’ motion for partial summary judgment dismissing objection fourth to the probate of the propounded will dated January 26, 1980 and objectants’ cross motion for summary judgment dismissing the probate petition is whether decedent revoked the propounded will by performing one or more of the acts enumerated in EPTL 3-4.1 (a) (2) (A) upon a photocopy of the will. No authority directly on point has been uncovered on this issue.
Decedent died on March 14, 1990 at the age of 91 years. Her distributees are three nieces and one nephew. The propounded instrument is a two-page typewritten document containing a modest bequest to one of decedent’s nieces and bequeathing the residue of this estate, alleged to have a value in excess of $1,000,000, to decedent’s nephew. Decedent’s nieces filed objections to probate raising issues with regard to due execution, testamentary capacity, and fraud and undue influence in addition to the issue of revocation presented in the pending application.
To a substantial degree, the relevant factual chronology is not in material dispute. Proponents are the attorney-draftsman of the propounded instrument and his law partner in whose offices the instrument was executed on January 26, 1980. The instrument was retained by proponents until it was filed for safekeeping in the Surrogate’s Court, Westchester County, on February 7, 1980. The original of the propounded will was delivered to this court in connection with the probate proceeding.
It is alleged that decedent, accompanied by one of the objectants and her husband, on February 8, 1982 had an appointment with an attorney during which she expressed her intention to revoke the will. She apparently did not know that the original will had been filed for safekeeping or have any other idea as to its location but she had brought a photocopy of the executed original. Prior to the appointment, decedent had written the word "Void” at the top of the first page of the photocopy. During the meeting with counsel, decedent wrote the word "Cancelled” across the first page of the photocopy under which notation she wrote the date and her initials. Decedent then cut her signature out of the second page of the photocopy. The latter two acts were performed in the presence of decedent’s niece, her husband, and two attorneys. Counsel *954 subsequently retained possession of the altered photocopy and prepared a file memorandum which memorialized the transaction. Apparently decedent never executed a later will. Conservators of her property were subsequently appointed by the Supreme Court, Bronx County.
The disposition of these motions turns upon an analysis of the statutory requirements for revocation of a testamentary instrument. The relevant statute, EPTL 3-4.1 (a), provides that, "[ejxcept as otherwise provided in this chapter,” a will may only be revoked in the manner set forth therein. EPTL 3-4.1 provides that a will may be revoked in whole or in part by the execution of another will or a writing of the testator indicating the intention to revoke executed with the requisite formalities for the execution of a will. Alternatively, a will may be revoked in whole only by such physical acts as burning, tearing, cutting, cancellation, obliteration, or other mutilation or destruction performed by or on behalf of the testator. Lastly, a will may be revoked by a nuncupative or holographic declaration under the same circumstances which would result in a nuncupative or holographic will being valid under EPTL 3-2.2.
Assuming arguendo that decedent performed all of the acts that objectants assert that she performed on February 8, 1982 and further assuming that she had performed these acts on the original rather than the photocopy of the will, the court would agree with objectants that her act of cutting out her signature with an intent to revoke the will would be sufficient under EPTL 3-4.1 (a) (2) (A) to revoke the will (39 NY Jur 2d, Decedents’ Estates, § 621, citing Matter of Monette, 282 App Div 987; Matter of Halpern, 32 Misc 2d 808; Matter of Sax, 25 Misc 2d 576; Matter of Rosenberg, 205 Misc 528; Matter of McCaffrey, 174 Misc 162; Matter of Brookman, 11 Misc 675). Objectants argue that it is a logical extension of the provisions of SCPA 1407 and the cases construing it to conclude that a will may be revoked by acts on a photocopy thereof where the testatrix is unaware of the location of the original. First, they note that the provisions of SCPA 1407 permit the use of a photocopy together with other proof to probate a will where the original is lost or destroyed. Next, they point out that the provisions of SCPA 1407 were held applicable in Matter of Borden (149 Misc 2d 82), to permit the use of a photocopy of a revocatory instrument to establish that the original thereof was executed as required by EPTL 3-4.1 (a) (1) (B) and validly revoked the will notwithstanding that the original of the *955 revocatory instrument could not be located. Objectants contend that, if the copy of a writing can be the basis for a holding that a will was revoked by a writing, a copy of the will should also suffice for a hold that a will was revoked by an act performed upon the copy. Essentially, it is the position of proponents that it would defy logic to conclude that the Legislature was referring to anything other than the original instrument when it provided that a will may be revoked by "burning, tearing, cutting, cancellation, obliteration, or other mutilation or destruction”. Proponents conclude that decedent’s acts, at best, must be viewed as writings which are insufficient to revoke the will under either EPTL 3-4.1 (a) (1) or (b).
The courts have been as unyielding in demanding strict compliance with the requirements of EPTL 3-4.1 for the revocation of a will as they have in demanding compliance with the requirements of EPTL 3-2.1 for the execution of a will (Matter of Coffed, 46 NY2d 514; Matter of Tremain, 282 NY 485; Matter of McGill, 229 NY 405; Burnham v Comfort, 108 NY 535; Lovell v Quitman, 88 NY 377; Matter of Ackerman, 129 App Div 584; Matter of Evans, 113 App Div 373; Matter of Lewis, 79 Misc 2d 610). In Matter of Coffed (supra, at 519), the Court of Appeals stated that "the exclusive mechanism for revocation of a testamentary instrument is contained in EPTL 3-4.1 * * * A less stringent provision would open the door to the dual evils of fraud and perjury * * * and perhaps fail to impress upon the mind of the testator the solemnity of the occasion.”
Although cited by objectants, the holding in Matter of Van Woert (147 App Div 483, mod 207 NY 756) stands, if anything, in opposition to their position. In Matter of Van Woert (supra), decedent apparently performed acts of mutilation not only on the original will but also on a copy of the will. In holding that these acts were insufficient to effectuate a revocation, the Court ruled that revocation by physical act was effective only when it "altogether destroys the whole will” (Matter of Van Woert, supra, at 484). The fact that the Court in a recitation of the facts of the case concluded that the physical acts upon the copy and the original of the will did not result in a revocation of the will cannot reasonably be interpreted as an inference, by silence, that enough physical acts upon only the copy would have been sufficient to have revoked the will.
Objectants’ reliance upon the holding in Matter of Borden *956 (supra) is also misplaced. Unlike the instant case, Borden did not involve the attempted revocation of a will by cancellation of a photocopy. In Borden the court held that a lost or destroyed revocatory instrument may be proven by a photocopy thereof provided that the original revocatory instrument satisfied the statutory formalities required for the revocation of a will. Surrogate D’Arrigo cogently stated the rationale for his determination in Matter of Borden (supra, at 87), as follows: "Indeed, it would be unduly harsh and illogical to construe section 1407 as to preclude the proving of a lost revocatory instrument where the decedent may have never even known that the original revocatory instrument had been lost while in the possession of his attorney.”
Here, it was apparently evident to all of the parties that what they were purporting to destroy was a copy of the will and not the instrument itself. In fact, if the statements submitted by objectants are taken at face value, the only reason for the cancellation of the photocopy was the concern on the part of decedent and her niece that the original will was in existence somewhere else. It is unfortunate that the attorneys who apparently advised decedent as to the cancellation of the photocopy did not prepare a simple one- or two-sentence document executed in accordance with the statutory formalities which could have achieved the result that was purportedly so strongly desired by decedent (EPTL 3-4.1 [a] [1] [B]). However, it would be misguided sympathy to hold that a clear intent to revoke a will can be a substitute for compliance with the other statutory requirements (Matter of Lewis, supra, at 611).
Although EPTL 3-4.1 (a) (2) (A) does not explicitly state that the physical act of revocation must take place upon the will itself, it would be a tortured and imaginative reading of the statute to infer that an act of burning, tearing, cutting, cancellation, obliteration, or other mutilation or destruction would refer to anything other than the executed original. The purpose underlying the enactment of the Statute of Wills (EPTL 3-2.1), which is a variant of the Statute of Frauds in even stricter form, is to protect a decedent’s estate, preserve the integrity of a testator’s plan for the distribution of his assets, and to close the door as far as possible to the obvious temptations of fraud, perjury, and collusion (Matter of Coffed, supra; Matter of Tremain, supra). Objectants have not cited, nor has the court found, a single decision in which the court permitted revocation by physical act to take place other than *957 upon the testamentary instrument itself. It might be surmised that the absence of any authority directly holding that a will may not be revoked by a physical act upon a copy of the will was only due to the fact that the objectants were the first who were ingenious enough to advance such a proposition.
A fertile imagination is not required to envision the malicious mischief that could be caused by the adoption of objectants’ position. For example, in cases where the executed original, but not all of the photocopies, can be found after decedent’s death, it might be contended that one or more of the photocopies had been destroyed by decedent with the intention to revoke the will. Of course, in all of these cases, the party whose testamentary intentions are at stake and whose acts are in question is the maker of the will whose lips have been sealed for eternity. It runs contrary to the policy reasons for enacting the Statute of Wills to permit testamentary dispositions to hinge upon the condition of a photocopy of a will.
For the reasons stated above, EPTL 3-4.1 (a) (2) (A) is construed as requiring that the acts enumerated therein must be performed upon the original will. Here, this was not done and it is equally clear that the writings upon the photocopy were insufficient to revoke the will as required by EPTL 3-4.1 (a) (1). Nor do the circumstances that are alleged to have existed on February 8, 1982 support a nuncupative or holographic revocation pursuant to EPTL 3-4.1 (b). Moreover, this is not a case where a beneficiary under a will has deceived the decedent into believing that she had destroyed the original will when, in fact, it was a copy and equitable principles, such as estoppel, a constructive trust or some other theory, could be called upon to prevent the beneficiary from profiting from his wrongful act. Accordingly, the motion for partial summary judgment dismissing objection "fourth” is granted and the cross motion is denied.