*219 OPINION OF THE COURT
Barbara Howe, S.
Decedent, a long-time professed nun of the Congregation of the Sisters of St. Joseph (hereafter, the Congregation), died at age 82 on March 26, 2014, leaving a probate estate worth nearly two million dollars. She was survived by three brothers, Joseph Attea, William Attea, and Martin Attea. Her will, dated August 31, 1994, has been offered for probate in this court by Joseph H. Spahn, husband of decedent’s predeceased sister Mary Spahn.[1] Preliminary letters testamentary were issued to Joseph on April 29, 2014.
(A)
0)
Decedent entered the Congregation in 1950 and lived as a member of the Congregation until the time of her death.[2] She executed a declaration of final profession on August 29, 1959, which included taking vows of poverty, chastity and obedience according to the Congregation’s constitution. Pursuant to those vows, she executed a will on June 18, 1979 (hereafter, the 1979 will), leaving all her property upon her death to the Congregation and naming the president thereof as her executrix.
On November 15, 1982, decedent was involved in an accident as a passenger in a vehicle allegedly owned and operated by the Congregation, and she suffered severe physical injuries. On August 14, 1984, upon a petition by decedent’s sister Mary, Erie County Court appointed Mary as guardian of decedent’s property, and authorized her to pursue a claim for damages arising out of the 1982 accident.[3]
By order of Supreme Court (Flaherty, J.), granted November 18, 1988, Mary’s action on behalf of decedent was settled in the amount of $1,700,000. Mary then returned to County Court with respect to the disposition of the net settlement proceeds— roughly $1,100,000 — and County Court made the following directions in its December 1, 1988 order:
*220 “ORDERED, that any proceeds received by Mary A. Spahn, as Conservator of Sister George Marie Attea, Conservatee, as the result of the settlement of the personal injury claim of the said Sister George Marie Attea, be deposited in any bank, trust company or savings and loan association where such deposits will be insured by the United States Federal Government or its agencies and that the proceeds of said settlement are also authorized to be deposited in a high interest yield account such as an insured ‘savings certificate’ or an insured ‘money market’ account or said monies may be invested in one or more insured or guaranteed United States treasury or municipal bills, notes or bonds.”
In the years following the automobile accident, decedent needed ongoing nursing care. She continued to reside with the Congregation and was cared for by other nuns to the extent possible, with additional professional treatment as necessary. On January 3, 1990, at the request of the Congregation, an order was issued by County Court authorizing the property guardian to pay the annual sum of $20,000 to the Congregation for decedent’s care and maintenance.
When Mary died on April 26, 2000, County Court appointed her husband, Joseph, as decedent’s successor property guardian. In that same order, County Court authorized an increase to $25,000 in the annual amount paid to the Congregation for decedent’s care. And, on November 15, 2011, again at the request of the Congregation, an order was issued by Supreme Court (Devlin, J.), to whom the guardianship matter had been transferred, authorizing an increase in the sum paid annually to the Congregation to $80,000, as well as directing a lump sum payment of $275,000 for reimbursement of payments for maintenance and care previously made by the Congregation on behalf of decedent.
(ii)
Decedent’s 1994 will leaves certain personal property to Joseph, and divides the residuary estate into many shares. Five shares are given to Joseph Attea, two shares go to William Attea, two shares go to Martin Attea, and two shares go to Joseph. Six shares are given to the Congregation, and the remaining shares are left to various Roman Catholic charitable institutions.
*221 Verified objections to probate were filed on August 14, 2014, by the Congregation, which allege:
1. Lack of due execution;
2. Lack of testamentary capacity; and
3. The will was the product of undue influence, duress, coercion, deception, or fraud.
To the foregoing “usual” probate objections, the Congregation has asserted a fourth basis for finding the will invalid:
“4. Acceptance of the Will to probate would violate the vow of poverty taken by Sister George Marie upon her admittance to the Sisters of St. Joseph and breach their contract, and therefore it would be inequitable to do so.”
On September 5, 2014, the estate filed a reply to the Congregation’s objections. Inter alia, the estate set up the following affirmative defense:
“FIFTH AFFIRMATIVE DEFENSE AND OBJECTION IN POINT OF LAW
“8. Petitioner states as an affirmative defense and an objection in point of law that the fourth objection to probate filed by the [Congregation] containing the allegations which set forth that the acceptance of the Will to probate would violate the Vow of Poverty upon the ground that any claim relative to the Vow of Poverty must be made after the Will has been admitted to probate. Thus, the fourth objection is premature at this stage of the proceeding and is not relevant on the issue of the validity of decedent’s Will” (emphasis added).
Pending now before me is a September 15, 2014 motion by the Congregation for summary judgment, which focuses solely and exclusively on its fourth objection. The Congregation’s motion requests this court to deny probate of the 1994 will based on what it claims was decedent’s breach of contract and of her vow of poverty, and thereafter to admit decedent’s 1979 will to probate. In the alternative, the Congregation asks this court to impose a constructive trust on the assets of decedent’s estate. The estate and all other parties oppose all relief sought by the Congregation, and papers have been submitted on the issues through April 2015.
*222 (B)
0)
The legal standards for deciding a motion such as that pending before me are clear. Procedurally:
“Summary judgment may be granted only where it is clear that no triable issue of material fact exists (see, e.g. Alvarez v Prospect Hosp., 68 NY2d 320 [1986]; Phillips v Joseph Kantor & Co., 31 NY2d 307 [1972]). The traditional reluctance to grant summary judgment in probate proceedings has long since passed, and it is now recognized that ‘[although summary judgment must be exercised cautiously, it is proper in a contested probate proceeding where the proponent submits a prima facie case for probate and the objectant fails to raise any genuine factual issues’ (Matter of Minervini, 297 AD2d 423, 424 [2002]; Matter of Coniglio, 242 AD2d 901 [1997]). Indeed, it is also clear that summary judgment may be granted even where such proceedings involve issues of a fact-sensitive nature, such as fraud and undue influence (see, e.g., Matter of Neuman, 14 AD3d 567 [2005]; Matter of Goldberg, 180 AD2d 528 [1992])” (Matter of Zirinsky, 10 Misc 3d 1052[A], 2005 NY Slip Op 51881[U], *2 [2005], affd 43 AD3d 946 [2007]; see also Matter of Cameron, 126 AD3d 1167 [2015]).
Substantively, a court may grant probate only when it is satisfied that the will before it is valid. Where it appears “that the will was duly executed and that the testator at the time of executing it was in all respects competent to make a will and not under restraint it must be admitted to probate” (SCPA 1408 [2] [emphasis added]). The proponent of the will bears the burden of proving due execution of the will and testamentary capacity (see e.g. Matter of Kumstar, 66 NY2d 691, 692 [1985]; Matter of Alibrandi, 104 AD3d 1175 [2013]; see also PJI 7:28), whereas the burden of proof on the issue of undue influence or fraud rests upon the party who asserts such claim (see e.g. Matter of Walther, 6 NY2d 49, 54 [1959]; Matter of Bodkin, 128 AD3d 1526 [2015]).
(ii)
The Congregation maintains that admission of the 1994 will to probate “would violate the vow of poverty taken by Sister *223 George Marie upon her admittance to the Sisters of St. Joseph and breach their contract, and therefore it would be inequitable to do so” (emphasis added). As the Congregation’s legal submission generally frames the issue:
“Though arising in the domain of sacred vows and canon law, this case is in law a straightforward matter of equity and contract principles, and the remedy is clear. Sister George Marie Attea (‘Sister George Marie’) took a vow of poverty when she joined the Congregation of the Sisters of St. Joseph of Buffalo (‘Sisters of St. Joseph’ or the ‘Congregation’) in 1959. Pursuant to that vow, she pledged to leave all her worldly goods to the Congregation upon her death. Sister George Marie executed a will to that effect. That a later will was executed — after Sister George Marie suffered severe brain damage in a terrible car accident and been declared impaired and unable to care for her property — should not overcome her vows and obligations” (emphasis added).
The estate preliminarily makes the following argument in opposition to the motion:
“The Congregation’s motion for summary judgment does not seek judgment on any of [its first three objection] grounds. Instead, the Congregation argues that, even if the requirements of § 1408 (2) are met, the Court should still deny the Will to probate based solely upon the existence of a contract, which allegedly required Sister George Marie to leave all of her assets to the Congregation. Even if this were the case, which the Petitioner denies, this Court has no power at this stage of the proceeding to give any effect whatsoever to the Contract as a way of avoiding probate of the Will” (emphasis added).
The estate correctly notes that the existence of a contract purporting to govern the testamentary dispositions of decedent has no effect on whether her 1994 will is valid. In Matter of Coffed (46 NY2d 514, 519 [1979]), our Court of Appeals, citing long-established authority, reiterated that
“fcjonceptually, the contract to make a testamentary provision is separate and distinct from the will itself. While the contract might be enforceable in equity, from a technical standpoint it has no effect *224 upon the will’s status as a legal instrument. Thus, this court has previously held that a document purporting to be a will may not be denied probate merely because the testator ‘bound himself to a different disposition of [his] property by contract’ (Matter of Higgins, 264 NY 226, 229; see, also, Matter of Davis, 182 NY 468)” (emphasis added).
These principles were noted more recently by the Appellate Division, Second Department, in Matter of Murray (84 AD3d 106, 116 [2011]):
“[A] will may not be denied probate on the ground that the testator previously ‘bound himself to a different disposition of [his] property by contract’ (Matter of Higgins, 264 NY 226, 229 [1934] [discussing former Surrogate’s Court Act § 144, the predecessor statute to SCPA 1408]; see SCPA 1408 [2]). Put differently, the enforceability of the terms of a will does not affect the ‘will’s status as a legal instrument’ (Matter of Coffed, 46 NY2d 514, 519 [1979]), nor does it determine if the will should be admitted to probate (id.)” (emphasis added).
Here, the Congregation’s fourth objection to probate of decedent’s 1994 will has nothing to do with whether the will itself is valid. The fact that decedent may have bound herself to a different disposition of her property by way of a prior agreement — an issue which I need not and do not decide, and on which I express no opinion at this juncture — is not a basis for this court to deny probate of the 1994 will if it is otherwise valid. If the 1994 will is ultimately admitted to probate, the Congregation may well seek relief as to the alleged assets of the estate premised upon its “prior contract” theory, but that is clearly a matter for another day. And, in a similar vein, there is no present basis for adjudicating the “prior contract” issue or the “constructive trust” issue, as those matters are irrelevant to any issue actually now before me, namely, the validity of the 1994 will. As such, those other matters may not be entertained in this probate proceeding.
(C)
Accordingly, I hereby deny the Congregation’s motion for summary judgment in all respects, and I dismiss the *225 Congregation’s fourth objection to probate as a matter of law. This dismissal, however, is without prejudice to the Congregation asserting the matters encompassed in its fourth objection, and its constructive trust claim, in some separate proceeding.

. Decedent had also executed wills in 1991 and in 1979.

. The factual background set out in this decision is taken from a combination of the estate papers now before me and papers in decedent’s related guardianship proceeding (which has recently been transferred to me with respect to the final accounting matters).

. In 1984, the County Court proceedings were conducted as a conservatorship (Mental Hygiene Law art 77). Because, since April 1, 1993, such proceedings are called guardianships under article 81 of the Mental Hygiene Law, I use the current terminology here.