In the Matter of Proving the Last Will and Testament of JOHN KILTZ, Deceased.

Surrogate's Court, Schoharie County, July 24, 1925.

**Wills — contested probate — objections that paper propounded for probate was not last will — evidence disclosed execution of two wills subsequent to paper propounded for probate — subsequent wills, in absence of evidence within Decedent Estate Law, § 41, as to republication of first will, revoked latter instrument — subscribing witness to subsequent will — rules of evidence applicable — execution of separation agreement by testator's widow releasing all her right, title and interest in testator's estate concludes her as party in interest in proceeding — widow not " person interested " entitled to file objections to probate under Surrogate's Court Act, § 147 — Surrogate, pursuant to Surrogate's Court Act, § 144, has power to refuse probate though no objections are filed.**

Testator's will should be denied probate where it appears that he had executed two subsequent wills, one of which contained a disposition of all his property entirely inconsistent with the will propounded for probate, and the other containing a revocation clause, since both wills, having been executed subsequent to the earlier will must be considered as revoking said earlier will and said revocation remains effective though it must be presumed from evidence that those wills which were shown to have been in testator's possession and were not found subsequent to his death, were destroyed with intention of revoking them.

Moreover, there was no evidence that the first will was ever republished or revived within the meaning of section 41 of the Decedent Estate Law following its

revocation by the subsequent wills; revoking a subsequent will does not revive a will revoked therein.

A subscribing witness to a subsequent will revoking a prior will is subject to the same rules of evidence as if he were a subscribing witness of the prior will offered for probate.

The execution of a separation agreement by testator's widow, prior to his death, releasing all her right, title and interest in testator's estate, bars any pecuniary rights she may have had in his estate, and, within the meaning of section 147 of the Surrogate's Court Act, said widow is not a person interested in the proceeding for the probate of testator's will and is not entitled to file objections to the probate thereof.

However, said will will be denied probate pursuant to Surrogate's Court Act, section 144, notwithstanding the absence of a contestant to such probate.

PROCEEDING for probate of will.

*F. Walter Bliss*, for the proponent.

*Ellsworth Baker*, for Mary Kiltz and others.

BEEKMAN, S.:

The will propounded for probate is dated August 4, 1920. The testator died on or about February 5, 1924. He left a widow, Mary Kiltz, and one daughter, Hattie Keyser, and three grandsons (children of a deceased daughter), as his only heirs at law and next of kin. By the terms of his will he bequeathed all of his property to Sidney Keyser, who is nominated as sole executor, and his wife, Mary Kiltz, is not referred to therein.

The petition states that the testator left no real estate.

An answer and objections in writing, duly verified, were filed by Mary Kiltz, the widow, alleging that the paper propounded is not the last will and testament of the decedent, in that subsequent to the execution thereof the said decedent executed a will at Central Bridge, N. Y., which will disposed of all the personal property of the deceased and revoked all former wills; that subsequent to the execution of the will offered for probate in this proceeding the said testator married said Mary Kiltz, and that under section 35 of the Decedent Estate Law said will propounded for probate was revoked, and that said Mary Kiltz is the widow of the testator, and that subsequent to the execution of the will offered for probate the decedent executed a will at Gilboa, N. Y., which purported to dispose of all the property mentioned in the will offered for probate and revoked all former wills. No question is raised as to the legal execution of the alleged instrument executed August 4, 1920, and propounded, or as to the mental capacity of the testator or his freedom from restraint.

The testator and Mary Kiltz were married on April 4, 1921. Willis Baker, residing at or near Gilboa, N. Y., testified that

about a week after the marriage of testator and Mary Kiltz, the former came to his house and asked him to draw a will for him; that Mary Kiltz and the wife of the witness were present during the conversation between the witness and the testator in relation to the will. ·

He testified: " He [John Kiltz] wanted to will his property to his wife. It was a short will. I commenced it: ' John Kiltz being of sound mind hereby bequeaths my property to my beloved wife ' (I told the name) — and that was the substance." When asked whether there was anything in the will as to whether he revoked all former wills, the witness answered: " There was not." The witness states that the will was read to the testator before the testator signed it, that the testator signed it and said it was his last will and testament, requested the witness and his wife to sign as witnesses and that they signed and that the transaction took place in a room fourteen by fourteen or sixteen by sixteen, with the testator, the two witnesses and the wife of the testator all present all the time. The testimony of the subscribing witnesses, Willis Baker and his wife, Ida M. Baker, is somewhat fragmentary, but it plainly shows that the testator executed a will with all the legal formalities and that the will disposed of all his property. The proponent stresses the point that the witness Willis Baker was the brother-in-law of Mary Kiltz by a former husband and that he is the nephew of the contestant's attorney; however, his testimony was given with apparent candor and truthfulness. While he was not an attorney and had no large experience in drawing wills, he has been a school teacher for over thirty years and states that he had seen forms for drawing wills and knew some of the requisites of a legal will. It certainly is not to be presumed that his relationship to Mrs. Kiltz through her being the widow of his deceased brother and the fact that he was the uncle of the attorney would influence him to be untruthful.

William H. Long, of Gilboa, testifies that in May or June, 1922, he took the testator and his wife, Mary Kiltz, to the office of Wallace H. Sidney, an attorney at Central Bridge, N. Y., and while there a conversation occurred in relation to a will, in the presence of Kiltz, Long and Sidney and Mrs. Kiltz. Mr. Long said: " They said it was a will and they had to have two witnesses to the will." And that his recollection is that John Kiltz signed it and that Mr. Sidney told Kiltz that he would have to have two witnesses and Kiltz " wanted to know what was the matter with my signing it and I told him I would," and the witness signed the instrument in the presence of the testator. Mr. Sidney testified that he was an attorney and had been in practice for about twenty-

five years.   He testified to his preparing the will, reading it to Mr. Kiltz, the signing and the declaration by Mr. Kiltz that it was his last will and testament, the request by Kiltz that Long and Sidney should sign the will as witnesses and the signing of the witnesses in the presence of Kiltz.

The following is a part of Mr. Sidney's testimony: " Mr. Baker: Have you the will?   A. I have not.   Q. When did you last see it? A. April 14, 1923.   Q. What did you do with it then?   A. Mr. Kiltz wrote me to send him the will and on April 14, 1923, my records show that I mailed him the will, directing the will to him — that is the last I have seen it.   Q. You signed the will as a subscribing witness?   A. I did.   Q. Can you state whether or not there was a revocation clause in this will which you drew? Mr. Bliss:   Objected to on the ground that it is a confidential communication; that any knowledge of the witness as to the contents of the will was gained from the confidential relation of attorney and client; that it is privileged and that the document itself is the best evidence of its contents.   [Objection overruled.   Exception.] A. I cannot state positively.   I never remember drawing a will without a revocation clause in it.   Q. What is your best recollection?   [Objected to.   Objection overruled.   Exception.]   A. My best recollection is that there was a revocation clause in the will."

On cross-examination the following occurred: " Q. You are not sure whether or not it contained a revocation clause or not? A. Not more than I have stated above.   As I remember, I never drew a will without containing a revocation clause.   Q. That is the reason you think this contained one?   A. Yes sir.   Q. It is from your own actual knowledge that you think this contained a revocation clause?   A. I cannot state any of the contents from actual knowledge.   Q. As far as you are able to state here today from your own knowledge it may not have contained such a clause. A. There is the barest possibility."

Taking the whole testimony together, bearing in mind that this will was prepared by a lawyer in active practice for twenty-five years, who, as he testified, has drawn a great many wills (which fact is known to the court, from Mr. Sidney's frequent practice in this court), is it not most reasonable to conclude that the will did contain a revocation clause?   That certainly is the impression which the testimony makes upon the mind of the court.

As to the objections made by the attorney for the proponent to the evidence, it was subsequently shown by the testimony of the executor of the will propounded for probate that after search he had not found any other will than the one offered for probate, and that he never saw any will signed by W. H. Long and Wallace

H. Sidney as witnesses, and that the testator had lived with the executor for about a year before his death and died at his house. Besides, there is no evidence whatever of the existence of the will prepared by Mr. Sidney after Mr. Sidney mailed it to Mr. Kiltz on April 14, 1923.

As to the testimony being privileged, it must be borne in mind that Mr. Sidney was a subscribing witness, and under the law as it now is, the privilege of secrecy is waived. Section 34 of the Decedent Estate Law provides that "No will in writing, except in cases hereinafter mentioned, nor any part thereof, shall be revoked, or altered, otherwise than by some other will in writing, or some other writing, of the testator declaring such revocation or alteration, and *executed with the same formalities with which the will itself was required by law to be executed*," etc. Therefore, an attorney who is a subscribing witness to a subsequent will revoking a prior will is subject to the same rules of evidence as if he were a subscribing witness to the prior will offered for probate. The same reason exists for the admission of the evidence of an attorney who is a subscribing witness to a will as to the preparation of a will which revokes a prior will as to the preparation of the prior will when offered for probate.

In *Matter of Wear* (131 App. Div. 875) the attorney, who was a subscribing witness, was permitted to testify that he drew a second will which could not be found, which said will "disposed of all of decedent's estate and contained a revocation clause."

In *Matter of Myers* (28 Misc. 359) the testimony of the attorney, who was a subscribing witness, was introduced as to the contents of the second will and the fact that it contained a revocation clause.

The will dated August 4, 1920, having been followed by two wills, one of which contained a disposition of his property entirely inconsistent with the first will and the other having contained a revocation clause, must be considered and treated as revoked by the subsequent wills. The last two wills having been, when last accounted for, in the possession of the testator and not having been found subsequent to his death, it must be presumed that they were destroyed by the testator with the intention of revoking them. There is no evidence that the will dated August 4, 1920, was ever republished; therefore, it was never revived and must be denied probate. (Decedent Estate Law, § 41.)

Having reached this conclusion, it may be unnecessary to consider the marriage of the testator to Mary Kiltz subsequent to the instrument dated August 4, 1920. However, the evidence shows beyond doubt, and it is not denied, that John Kiltz and Mary Kiltz were married on the 4th day of April, 1921, and the said will of

August 4, 1920, does not make any provision for Mary Kiltz and she is not mentioned therein in such way as to show an intention not to make provision for her, but all this does not avail the said widow under section 35 of the Decedent Estate Law (as amd. by Laws of 1919, chap. 293), on account of the execution of an instrument dated January 13, 1923, in the nature of a " settlement " which is hereinafter discussed.

After taking the testimony of the proponents and the contestant, and after certain motions were made by proponent's attorney, the proponent offered in evidence articles of separation under seal, executed on the 13th day of January, 1923, by John Kiltz, the testator, and Mary Kiltz, his wife, and this instrument was received in evidence without objection. Thereafter the proponent moved to dismiss the objections and that the instrument offered for probate be admitted to probate on the ground that the contestant, Mary Kiltz, the decedent's widow, is not a person interested in this proceeding; because in the separation agreement heretofore submitted in evidence, she has released all her interest in the estate of the decedent. It was thereupon stipulated by both sides in open court that the court reserve decision on the motion until the court shall decide the entire case. The issue upon the validity of the separation agreement has been ably discussed in the briefs by counsel for the respective parties.

This agreement recited, among other things, that " whereas disputes and unhappy differences have arisen between the party of the first part and his wife, for which reason they have separated and are now living separate and apart from each other, and do hereby consent and agree to live separate and apart from each other during their natural life." And the instrument further provided among other things that " the party of the first part further agrees that he will pay to the party of the second part the sum of $1.00, which sum the party of the second part agrees to accept for her future care and maintenance as the wife of the party of the first part and in full release of him from any and all obligations on his part to support or maintain the party of the second part, or for any alimony whatsoever." And the party of the second part, the wife, covenanted and agreed with her husband that he might live separate and apart from her at all times and that " she will make no demand upon him that he contribute for or toward her support * * * or *make any demand from him whatsoever, or claim or seek to recover any property from him during his lifetime or from his estate after his decease.*"

The proponent claims this instrument is a bar to all rights which the widow would otherwise have in the estate of her deceased hus-

band, and the attorney for the widow in his brief claims that the agreement is invalid and of no effect whatever. Practically all the cases cited by the contestant were where *an action had been brought* directly to set aside the separation agreement on the ground of fraud and deception on the part of the husband, and the inadequacy of the amount agreed upon for support.

In *Effray* v. *Effray* (110 App. Div. 546) the court said: " where a separation exists as a fact and is not produced or occasioned by the contract, an agreement that the parties will continue to live apart and that the husband will pay a certain sum for the maintenance of his wife and children, is valid and can be enforced."

In *Rosenblatt* v. *Rosenblatt* (209 App. Div. 373) the court says: " a husband and wife may make a valid separation agreement. (*Winter* v. *Winter*, 191 N. Y. 462.) This contract is not void upon its face. The plaintiff has freedom of contract, and it is to be presumed that the contract represents her deliberate act. Asserting its invalidity because she was induced to enter into it by duress, the plaintiff must carry the burden of establishing that fact in this action. Such a contract is binding upon both parties unless set aside or impeached. (*Cain* v. *Cain*, 188 App. Div. 780, 782; *Matter of Warren*, 207 id. 793, 797.)"

In *Winter* v. *Winter* (*supra*) it is said that an agreement by the husband to pay such a sum for the support of his wife as is satisfactory to her cannot be said to have the effect of relieving the husband from his liability to support his wife, Judge VANN saying: " She is the best judge of what she needs for her support and the amount may be fixed and settled by an agreement made after actual separation without violating any principle of law or any statute now in existence."

In *Winter* v. *Winter* the court further says: " Does the contract in question 'relieve the husband from his liability to support his wife' in violation of the Domestic Relations Law? An agreement by the husband to pay such a sum for the support of his wife as is satisfactory to her cannot be said to have that effect."

The smallness of the sum agreed upon in the case at bar is referred to by the contestant. Sums of money to be paid are relative to the circumstances of the parties. It may well be that the circumstances of the husband, his health and perhaps inability to earn a livelihood, the absence of any means or means of any considerable amount, and other circumstances, may render the payment of one dollar very satisfactory indeed, to the wife, provided she may be relieved from the arduous duties of keeping house and nursing and caring for a decrepit and aged husband,

and be given the opportunity to go out in the world and choose her way of living or means of employment.

Separation agreements may be made between people in very humble circumstances as well as between those in high stations of society with millions at their command.

There is no evidence in this case that she was dissatisfied in any way with the provisions of the separation agreement as long as her husband lived. As far as considering the question of support at this time, it is held in *Barnes* v. *Klug* (129 App. Div. 192, 195) that " a husband ·cannot be compelled to support his wife except during his lifetime." No question as to the adequacy of the amount paid for support under the separation agreement is here raised until after the death of the husband.

In *Matter of Warren* (207 App. Div. 793, 796) the court says: " The wife must have had some information as to her husband's circumstances and reasons which seemed to her at that time sufficient to enter into the agreement ·which provided some support for the children and left her free to engage in productive industry. * * * Such a contract is binding upon both parties unless set aside or impeached. (*Cain* ·v. *Cain*, 188 App. Div. 780.) "

*Matter of Wylie* (187 App. Div. 840) is a case where an appeal was taken from an order of a surrogate directing executors to set apart to a surviving wife certain personal property of the class exempted by law for the benefit of widows. An appeal was taken to the Appellate Division and the opinion in the Appellate Division discloses that the husband had paid his wife a certain sum in consideration of which she agreed to release him from all marital obligations, the agreement providing that the purpose and intent of the agreement was to place the parties in the same relation and position as if no marriage had been solemnized between them — so far as any and all obligations are concerned, and providing that the wife shall release and acquit her husband of and from all obligations to support and maintain her as his wife, and of and from all liabilities or obligations growing out of or issuing from the marital relations, the court construing one clause of the agreement to mean that the wife would release all property that the said husband at any time before his death has owned since she became his wife. The court unanimously held that the widow effectually barred herself from the exercise of her right to have the property in question set apart to her, and reversed the order of the surrogate.

In *Cain* v. *Cain* (188 App. Div. 780) action had been brought for a divorce. The judgment of the court below dissolved the marriage and made provision for the support of plaintiff and an infant child. A separation agreement had been entered into

between the parties prior to the beginning of the action, by the terms of which the wife acknowledged the receipt of a certain sum from the husband and released the husband from all liability for support, care and maintenance and all her rights in his property, including her inchoate right of dower. The Appellate Division struck out the provision for alimony for the support of the wife and held that the provision for alimony could not be sustained and that such contract was binding upon both parties unless set aside or impeached. It further held that the provision was not in violation of the Domestic Relations Law on the ground that in the separation agreement no provision was made for the maintenance of the child after he became fourteen years of age and that the contract which was made between husband and wife did not contain any express promise upon the part of the wife to maintain and support the child, the court upheld that part of the judgment which provided a certain sum to be paid for the support of the child, the court saying: "As regards the provision in the judgment for the support of the child, I think that should be upheld. Even if plaintiff could contract to relieve the husband from such support, I think she has not done so. There is nothing in the contract which expressly so states."

In the case at bar it will be noted that, as above stated, it was provided that the wife should not make any demand upon the husband whatsoever, or claim or seek to recover any property from him during his lifetime or from his estate after his decease.

The Domestic Relations Law nowhere provides that a husband and wife may not voluntarily release an interest which may accrue upon the death of each other. The agreement of the wife to release the estate of her husband from any claims is not a contract to alter or dissolve the marriage or to relieve the husband from his liability to support his wife.

In *Greenfield* v. *Greenfield* (161 App. Div. 573) the separation agreement provided that the husband was discharged of and from any and all claim and right of support and maintenance by him during the rest of his life, and further stated that the same was in full settlement of any claim for alimony and counsel fee in any action either for a divorce or for a separation. In the court below the order was made granting alimony and counsel fees. The Appellate Division held that the release executed by the wife was valid and binding and constituted a bar to her demanding and receiving support from the defendant.

*Matter of Kopf* (73 Misc. 198) is cited by contestant. That case has no application to the instant case because in that case the parties agreed with each other that they " should not ever

interfere with or object to a marriage or sue (each the other) for remarrying." Such provision was held to be " *contra bonos mores,*" and that illegality vitated the whole contract.

In *Matter of Hagen* (119 Misc. 770; affd., 206 App. Div. 682) a separation agreement similar to the instant case was recognized by the court as a valid release of the wife's interest in her husband's estate and as preventing her sharing in the personal property of her deceased husband and she was held to be not a party in interest who might contest the decedent's will. The *Hagen* case was followed in *Matter of Klein* (121 Misc. 568), where payment was made as a permanent settlement of all rights of the wife against her husband. A specific provision was made releasing her dower in her husband's real estate. The court said: " A fair construction of the language of the separation agreement, which by its provisions was made binding upon the heirs, executors and representatives of each party, is that not only the wife's interests in the realty, but also in the entire estate were intended to be released and terminated." The court held that the decedent's widow had, therefore, no pecuniary rights in the estate and was not a person interested in the proceeding under section 147 of the Surrogate's Court Act.

Under the authorities and upon reason, I am constrained to hold that by virtue of the separation agreement, Mary Kiltz has released all her right, title and interest of, in and to the estate of the testator and is not a party in interest in this proceeding.

Mrs. Kiltz was the only party who filed formal objections but the grandchildren, John, Charles and Raymond Collins, appeared by the attorney who also represented Mrs. Kiltz and as the answer and objections of Mrs. Kiltz raised the question of the revocation of the will of August 4, 1920, by two subsequent wills and as no objections were raised or entered by the proponent at the time of the filing of the answer and objections of Mrs. Kiltz as to Mrs. Kiltz not being a party in interest, and, therefore, not having a right to contest, the said grandchildren must be considered as contestants joining in the objections as effectually as if they had separately filed formal objections themselves, and the objections of Mrs. Kiltz must inure to their benefit.

The separation agreement was not offered in evidence by the proponent until the very close of the case, after all the evidence had been introduced as to the three alleged wills.

Furthermore, section 144 of the Surrogate's Court Act provides that " before admitting a will to probate, the surrogate must inquire particularly into all the facts and circumstances, and must be satisfied with the genuineness of the will, and the validity of its execution." This devolves a duty upon the surrogate which can-

not be disregarded even where no objections to probate are filed. (*Matter of Shaper*, 86 Misc. 577; *Matter of DeWitt*, 198 N. Y. Supp. 92.)

Redfield on Wills (p. 5) says: " A last will and testament may be defined as the disposition of one's property to take effect after death." " Genuine " means " true," " real," " authentic." A will is not a genuine disposition of one's property if it has been revoked. " Will " means the last will and testament, the final disposition of property, speaking as of the time of the testator's death. An instrument is not a last will and testament if it has been revoked by later instruments executed with the formalities of a will and not revived by republication — it is not " genuine."

Testimony having been introduced which satisfies the court that an instrument purporting to be a will is not genuine, in that it has been revoked, it would be a travesty on justice if the court should admit it to probate because at the end of the trial evidence was introduced which proved that the one party who filed formal objections had no standing in court, when there were other parties whose rights should be protected.

In *Matter of Bartholick* (141 N. Y. 166) the question was raised as to the right of the surrogate to refuse probate to a will as to personal property because of the absence of some one contesting such probate as next of kin.

The court said: " The finding of the jury, standing as it did in full force, *was the exact equivalent to a finding by the surrogate to the same effect.* Upon such a finding based upon evidence legally taken has the surrogate any legal right to admit a will to probate for any purpose? The statute directs that the surrogate before admitting a will to probate must inquire particularly into all the facts and circumstances and must be satisfied of the genuineness of the will and the validity of its execution. [Code Civ. Proc. § 2614; now Surrogate's Court Act, § 144.] The same proof is required in regard to wills of both real and personal estate upon the question stated in the above section. When the question is properly raised by a party having the right to raise it in some capacity, and where, upon the investigation which succeeds, the surrogate becomes satisfied and finds that the testator had not mental capacity to make a will, and that the instrument offered for probate was obtained by fraud and undue influence, we think the surrogate has the right, and that it is his duty, to wholly refuse to probate such an instrument, even though the contestant who prosecutes the controversy is only interested as an heir at law and is not one of the next of kin. The finding necessarily shows *that no will was ever executed according to law, and the surrogate*

*is not obliged to stultify himself by admitting the will to probate as a will of personal property only, because of the absence of some one contesting such probate as next of kin.* There was a valid contest by one who had a legal standing in court, and upon that contest the fact appeared that the alleged testator was incapable of making any will, on the ground of mental incapacity. The surrogate's duty under the statute is to inquire and become satisfied of the existence of the necessary facts, and having that right and duty, if he become satisfied and finds as is herein stated, he ought to refuse probate of the instrument for any purpose."

Furthermore, no great injustice can result from the denial of probate to the will of August 4, 1920, inasmuch as the only next of kin of deceased are his daughter and his three grandchildren and his estate consists solely of personal property.

The decree will provide that the instrument propounded for probate herein and dated August 4, 1920, was revoked by two subsequent wills, which were destroyed by the testator in his lifetime, with the intention of revoking the same, and that said instrument dated August 4, 1920, was not revived or republished and is denied probate; that said Mary Kiltz, the widow, by the separation agreement, released all her right, title and interest of, in and to all the property and estate by the instrument dated January 13, 1923, and has no interest therein as the widow of said decedent and, therefore, is not a " person interested " who is entitled to file objections under section 147 of the Surrogate's Court Act.