Collins, S.
The decedent died on April 22, 1954. After her death a careful and exhaustive search for a will was made but none was found. On May 14, 1954, letters of temporary administration on her estate were granted to the Public Administrator and thereafter on December 15, 1954, permanent letters were issued to him. On or about January 11, 1955, almost nine months after the death of the decedent, an instrument dated December 12, 1930, purporting to be a will of the decedent was enclosed in an envelope by some person whose name and address are unknown and mailed to the Society for the Prevention of Cruelty to Animals. On January 26, 1955, the attorneys for the American Society for the Prevention of Cruelty to Animals transmitted the will to this court for filing, together with a letter written by Mr. Nichols, a member of the firm of attorneys, stating that they had prepared a later instrument which decedent had executed as a will on January 28,1938; that on September 7, 1944, the decedent had requested him to send her the original will of January 28, 1938, by registered mail, which was done. He further stated that he was unable to produce a copy of the will because the office file on the matter could not be located.
The Public Administrator thereupon petitioned this court for a decree determining (1) that probate to the decedent’s 1930 will be denied on the ground that the later will effectively revoked the earlier will, and (2) that under the applicable presumption the 1938 will, not having been found after decedent’s death, was destroyed by her with the intention of revoking it.
Answers were filed on behalf of the American Society for the Prevention of Cruelty to Animals and by the Vivisection Investigation League, Anti-Vivisection Society of New York, Inc., praying that the testamentary writing dated December 12, 1930, in which they were named as remaindermen of the residuary estate of decedent, be admitted to probate as her last will and testament. In its amended answer the Vivisection Investigation League, Anti-Vivisection Society of New York, Inc., alleged (1) that the January 28, 1938 will had not been properly executed in accordance with section 21 of the Decedent Estate Law; (2) *866 that, if properly executed, it did not revoke the will of December 12, 1930, and (3) that, if properly executed, it did not dispose of the decedent’s entire estate.
The matter came on for trial before the court. Mr. Nichols testified that their client, the American Society for the Prevention of Cruelty to Animals had referred the decedent to his firm; that in January, 1938, the decedent had come to the office for the purpose of having a will drawn; that Colonel Herbert Barry, senior member of the firm, had been in charge of the preparation of the decedent’s will; that he (Mr. Nichols) took some part in the preparation of the will and had supervised its execution by the decedent on January 28, 1938; that one Agnes M. Bull and one Bichard Helms, who were employed by the Manufacturers Trust Company, had come to their office at decedent’s request and had acted as subscribing witnesses. Mrs. Bull, called as a witness also testified as to the execution of the 1938 will. The other subscribing witness, Mr. Helms, was shown to be deceased.
There can be no doubt from the evidence that the decedent made a new will on January 28, 1938; that it was duly executed in accordance with the formalities required by section 21 of the Decedent Estate Law, and that she was of sound mind and free from restraint at the time that she signed it. (Matter of Cottrell, 95 N. Y. 329, 339.)
Mr. Nichols further testified that, although he had no personal specific recollection as to whether there was a revocation clause in the 1938 will, it was Colonel Barry’s custom to have a revocation clause in wills which he prepared; that he, Mr. Nichols, had never read a will prepared in his office which did not contain a revocation clause and that whenever he prepared a will it contained a revocation clause; that his recollection, based upon a strong impression, was that the American Society for the Prevention of Cruelty to Animals was named as a residuary legatee in the 1938 will, but that he did not know whether it was the sole residuary legatee; that he did not recollect the other terms of the will except that there was a reference to the erection of a mausoleum and a legacy to Hartsdale Canine Cemetery; that Colonel Barry, the draftsman of the will, was an experienced lawyer who then had been practicing for more than 40 years and had prepared hundreds of wills, and that he, Mr. Nichols, had himself been practicing law at the time for about 14 years. He testified also that insofar as he knew the decedent did not republish her earlier will of December 12,1930; that he did not prepare any other testamentary instrument for her; that in 1954 he had looked at the decedent’s will file in the *867 office; that the file was thereafter misplaced and could not be found after diligent search.
Richard Joyce Smith, an attorney and relative of the decedent, testified that in May, 1942, the decedent showed him either a conformed or signed copy of the 1938 will; that it contained a revocation clause; that it contained provisions for minor bequests to several individuals; that the American Society for the Prevention of Cruelty to Animals was named as residuary legatee and that the executors were Manufacturers Trust Company and Robert Langdon. In a memorandum in her own writing dated July 31, 1939, to the Manufacturers Trust Company the decedent corroborated the fact that Manufacturers Trust Company and Robert Langdon were the executors named in the 1938 will.
In the 1930 will, the Manufacturers Trust Company and William V. Werner were named as executors and trustees; the Hartsdale Canine Cemetery was named as a legatee and the Society for the Prevention of Cruelty to Animals and the Vivisection Investigation League were named as residuary income beneficiaries and remaindermen. May F. Sturdevant, a sister of decedent, also a legatee and an income beneficiary under the 1930 will, predeceased decedent, as did William V. Werner, an income beneficiary and an executor and trustee thereunder. It is a fair inference that the deaths of her sister and Werner were factors which brought her to her attorneys for the purpose of having them draw a new will for her.
Although a copy of the 1938 will could not be produced, the court is convinced from all of the evidence that the provisions of the 1938 will were inconsistent with the 1930 will; that the 1938 will contained a revocation clause (Matter of Wylie, 162 App. Div. 574; Matter of Kiltz, 125 Misc. 475) and a residuary clause and that it provided for a complete disposition of her entire estate. As was said by the court in Matter of Wylie (supra, p. 580): “ It being established, then, that a will was drawn and executed at such time, it is, in my judgment, a very short step to the further fact that such will contained a proper revocation clause of all former wills. This will was drawn by a careful and experienced lawyer, one who had a great deal of knowledge and experience in the preparation of wills, and an experience and observation in the drawing and execution of wills for twenty years leads me to believe that not more than one per cent of such instruments, when drawn by lawyers, fail to contain the usual clause revoking former wills, and, indeed, the printed blank form almost invariably has such a clause therein. It would be much more reasonable to believe that a will drawn *868 by a lawyer contained such a clause than to believe the contrary, and the testimony of all the witnesses that there was such a clause in the will agrees with experience, with reason and with the usual course of practice in such matters. I take it there is no presumption of law that a will contains a revocation clause, but observation, experience and professional knowledge, in my judgment, create an inference that such would ordinarily be the fact.”
In a letter dated January 27, 1938, Colonel Barry wrote to the decedent as follows: “I have received your letter with enclosure this morning and have now made a draft of the will * * *. I have incorporated a provision for estate, transfer and other taxes to be paid from the residuary estate which I understand, is in conformity with your wishes and will, relieve the specific legatees of liability on that ground * * *. As I recall all of your first cousins are included among the legatees.”
This letter written one day before the execution of the will confirms the testimony of the witnesses that there was a residuary clause in the 1938 will.
Several witnesses were called concerning the search that was made in the decedent’s apartment before and after she died. They testified that no will or copy of any will was found. The Public Administrator advertised in the Safe Deposit Bulletin of the New York Safe Deposit Association for any safe deposit box or record of the decedent’s 1938 will, and more than 700 letters were written by him to various banks and safe deposit companies inquiring about decedent’s will. Mr. Nichols also advertised for information as to the will in several newspapers and exercised due diligence in his search. These extensive investigations failed to produce any result.
The evidence offered by the petitioner to prove the execution and delivery of the 1938 will of the decedent was not for the purpose of establishing it as a lost will, since after careful and diligent search it had not been found in the decedent’s possession or elsewhere, but to show that the 1930 will offered for probate was not the last will of the decedent (Matter of Wear, 131 App. Div. 875; Matter of Barnes, 70 App. Div. 523). Since the proof established that the decedent’s 1938 will was returned to her in 1944, was last known to have been in her possession and not found at her death, the presumption arises that the decedent herself destroyed her will animo revocandi (Matter of Kennedy, 167 N. Y. 163; Matter of Robinson, 168 Misc. 545). Such presumption of revocation was not rebutted by any evidence (Matter of Staiger, 243 N. Y. 468; Matter of Christesen, 277 App. Div. 893; Matter of Bly, 281 App. Div. 769). Nor did the *869 revocation of the 1938 will operate to revive the 1930 will which had been revoked by the later instrument (Matter of Wylie, 162 App. Div. 574, supra; Matter of Cunnion, 201 N. Y. 123; Matter of Jacob, 63 N. Y. S. 2d 287). The petitioner’s application for the denial of probate of the decedent’s will dated December 12, 1930, is therefore granted. It follows that the decedent died intestate and the issuance of letters of administration heretofore granted to the Public Administrator of the County of New York is confirmed.
Submit decree on notice accordingly.