In the Matter of the Estate of EARL J. COFFED, JR., Deceased.

Fourth Department, November 14, 1977

*Leonard W. M. Zingler* for appellant.

*Brown & LeBlanc (Norman A. LeBlanc, Jr.,* of counsel), for respondent.

CARDAMONE, J. Appellant, Edwin Waley, Jr., stepson of Earl J. Coffed, Jr., deceased, appeals from a decree of the Erie County Surrogate's Court which denied probate to deceased's last will dated September 22, 1971 upon the objection of deceased's natural son, David E. Coffed, respondent. The decree appealed from must be reversed and the will admitted to probate.

On August 12, 1944 the deceased married Beverly A. Coffed, his first wife, from whom he was divorced on October 15, 1970. There were three children born of this marriage, one of whom is respondent in this proceeding. On July 10, 1971 the deceased married Dessie M. Waley, his second wife, a widow with one child, Edwin Waley, Jr., the appellant. On September 22, 1971 the deceased and his second wife entered into an agreement to and did execute reciprocal wills. Pursuant to the agreement, the reciprocal wills provided that upon the death of either party the entire estate of the deceased would pass to the surviving spouse. Upon the death of the survivor, or in the event that both parties died simultaneously, the estate would be divided into equal parts and distributed one part equally to the three children of the deceased by his first marriage and one part to the child of Dessie M. Coffed, by her former marriage. The agreement further provided that neither party would "revoke or change or in any way modify the will as reciprocally drawn". Thereafter, Dessie M. Coffed sold her home in Lancaster, New York, and gave deceased in excess of $10,000 in March, 1972.

On October 18, 1973 Dessie M. Coffed obtained a default divorce decree and was awarded sole use and possession of the jointly owned marital home until the sum of $10,000 was repaid by way of alimony set at $50 per week. The divorce decree was modified on January 15, 1974 pursuant to an agreement and stipulation by the parties which provided that the deceased would make a lump-sum settlement of $10,000 to his second wife in exchange for which she would quitclaim her interest to their jointly owned marital home. One day before this modification, on January 14, 1974, the parties executed mutual general releases of all claims of any nature including contracts, agreements, promises which either had against the other, which releases were expressly declared binding on the respective heirs and assigns. On May 28, 1976 two years and seven months after the divorce, Earl J. Coffed, Jr., died in the City of Buffalo without executing a new will or revoking his will dated September 22, 1971. Appellant Waley filed a petition offering this will for probate and objections were filed to it by respondent, David Coffed.

In denying probate the Surrogate reviewed the factual circumstances attendant upon the execution of the agreement and the reciprocal wills. He contrasted them with the subsequent intentions of the deceased and his former wife, Dessie,

as evidenced by the terms of their divorce decree and the general releases which they executed in favor of each other. The Surrogate found that at the time when the Coffeds obtained their divorce they did not consider the continuing legal effect of their agreement and reciprocal wills. The Surrogate opined that inasmuch as the wills were entered into and in consideration of the agreement to execute them, the later execution by the parties of mutual general releases effectively revoked their underlying reciprocal wills. The Surrogate concluded that such conduct subsequent to the execution of the reciprocal wills, i.e., the divorce and mutual general releases, was persuasive evidence that the decedent did not himself intend the instrument offered for probate to be his last will and testament. Finally, the Surrogate found that EPTL 5-1.4 —which states that if a testator, after executing a will, is divorced, any disposition in the will to the former spouse is revoked—is inapplicable where the will was executed pursuant to a reciprocal agreement or where the testator is a party to a joint or a mutual will. We cannot agree.

A will is an ambulatory instrument and, as such, is revocable at pleasure; but, as a contract, if supported by consideration, it may be enforced (64 NY Jur, Wills, § 36; *Matter of Ruark,* 64 Misc 2d 1008, affd 35 AD2d 920). Principles of contract control mutual reciprocal wills drawn pursuant to an agreement. Once entered into the parties to such an agreement ordinarily, absent a revocation effected only after notice, are no longer free to use or dispose of their property as they please. And, once one of the parties dies, the agreement is executed and, upon the surviving party's acceptance of its benefits, binds him and is enforceable upon his death against his estate *(Rich v Mottek,* 11 NY2d 90, 93-94; *Tutunjian v Vetzigian,* 299 NY 315, 319; *Rastetter v Hoenninger,* 214 NY 66, 73).

Such contractual considerations, which may at one time have had application to the relationship between deceased and his second wife, Dessie, were completely extinguished on January 14, 1974—the day upon which these two parties executed general releases terminating their September 22, 1971 agreement. From that time, no viable contract existed between the parties. The Surrogate incorrectly reasoned that the rescission of the agreement between the parties also worked a revocation of their mutual wills. Although the deceased survived these transactions for two years and four

months, and so far as the record reveals was free to do so, he did not revoke or amend his will. We may even surmise that he intended to change his will in accord with a natural desire to benefit his own three children exclusively. However, it is not for the courts to circumvent the statutory requirements regarding the revocation of a will. Those provisions do not contemplate an implied revocation, but declare that revocation must be effected with the same formality with which a will is executed or by some act of mutilation or destruction (EPTL 3-4.1; *Burnham v Comfort,* 108 NY 535, 540; *Lovel v Quitman,* 88 NY 377). The equities in the instant case may appear to favor a different result, but a more significant consideration is that the formalities attendant upon the revocation of a will are necessary to prevent mistake, misapprehension and fraud *(Matter of McGill,* 229 NY 405, 412). We conclude, therefore, that the deceased's will of September 22, 1971, not having been revoked, should be admitted to probate.

Several matters remain. Dessie Coffed will not benefit under her former spouse's will because, as noted EPTL 5-1.4 revokes any disposition or appointment of property to the former spouse. It goes on to state that "the provisions, dispositions and appointments made in such will shall take effect as if such former spouse had died immediately before such testator". In view of her divorce from deceased and because his will did not expressly provide otherwise, Dessie is statutorily barred from taking under the will, the appellant (her son) is not so barred and is entitled to the benefit of its provisions. Also, Dessie may not be bound to the provisions of her reciprocal will under principles of contract law because the agreement to execute these wills has been rescinded.

Finally, the Surrogate incorrectly presumed that whenever there is a dissolution of a marriage, it is the intention of the parties that their previously executed mutual reciprocal wills be revoked. Whether such an intent may fairly be drawn or not, it suffices to state that no such presumption of an implied revocation is presently provided for in the statute (EPTL 5-1.4).

Accordingly, the decree should be reversed and the testator's will should be admitted to probate.

MOULE, J. P., DILLON and DENMAN, JJ., concur; GOLDMAN, J., not participating.

Decree unanimously reversed without costs and will to be admitted to probate.