OPINION OF THE COURT
SCUDDER, EJ.
I
Robyn R. Lewis (decedent) was married to James A. Simmons (ex-husband), and they divorced in 2007. The parties resided in Texas during the course of the marriage, but they purchased property in Clayton, New York. Pursuant to the divorce decree entered in the State of Texas, decedent was awarded, inter alia, the real property located in Clayton. Decedent relocated permanently to that residence, and she lived there until her death in March 2010. Following decedent’s death, her parents applied for letters of administration, and amended letters of administration were issued in May 2010. Decedent’s parents thereafter renounced their interest in the Clayton property so that it would pass to decedent’s brother and half brother,
*206 In December 2010, petitioner, who is the father of the ex-husband, filed a petition to probate a will of decedent dated July 15, 1996 and executed in the State of Texas (1996 will). Pursuant to the 1996 will, decedent appointed the ex-husband, who at that time was still married to her, as executor of the will and beneficiary of all of her property. Also pursuant to the 1996 will, in the event that the ex-husband predeceased decedent, petitioner was named as alternate executor and alternate beneficiary. In his petition to probate the 1996 will, petitioner alleged that the testamentary disposition to the ex-husband, as well as his appointment as executor, were revoked by virtue of the divorce (see generally EPTL 5-1.4 [a] [1], [3]). Petitioner further alleged that he was the sole beneficiary of the 1996 will, and asked Surrogate’s Court to issue letters testamentary to him. At the time petitioner filed the petition to probate the 1996 will, he filed an additional petition seeking, inter alia, revocation of the amended letters of administration issued to decedent’s parents.
Decedent’s parents, brother and half brother (collectively, objectants) filed objections to probate. They contended that, inasmuch as decedent was a domiciliary of Texas at the time the 1996 will was executed as well as at the time of her divorce, the nomination of petitioner as the alternate executor and alternate beneficiary failed under the former Texas Probate Code. Pursuant to section 69 (b) of that code,
“[i]f, after making a will, the testator’s marriage is dissolved ... by divorce ... , all provisions in the will, including all fiduciary appointments, shall be read as if the former spouse and each relative of the former spouse who is not a relative of the testator failed to survive the testator, unless the will expressly provides otherwise” (emphasis added).
Objectants further contended that, because the divorce decree required the ex-husband to return any “paperwork associated with any items of the decree,” his failure to return the 1996 will to decedent wrongfully and fraudulently deprived decedent of the opportunity to access and evaluate the 1996 will. As a result, objectants contended that petitioner was “estopped from claiming any benefit or nomination from the late offering” of the 1996 will.
In supplemental objections, objectants contended that the 1996 will was “revoked by the revocatory language and content of a Second and Lost Will” executed by decedent (lost will). Fol *207 lowing a hearing, the Surrogate issued the decree in appeal No. 1, which dismissed all objections to the petition for probate and admitted the 1996 will to probate. The Surrogate further issued the decree in appeal No. 2, which revoked the amended letters of administration to decedent’s parents and issued letters testamentary to petitioner. We conclude that the decree in each appeal should be affirmed.
II
We note as a preliminary matter that our dissenting colleague would reverse primarily based on her conclusion that, because petitioner failed to account for all of the alleged copies of the 1996 will, he failed to rebut the presumption that the 1996 will was revoked by an act of destruction performed by decedent (see EPTL 3-4.1 [a] [2] [A]). Objectants have never contended, however, that the 1996 will was revoked by destruction. Aside from challenges to the testamentary dispositions in the 1996 will, the only other contention raised by objectants is that the 1996 will was revoked by the purported execution of the lost will (see generally EPTL 3-4.1 [a] [1] [A], [B]).
It is well settled that “[a]n issue may not be raised for the first time on appeal . . . where[, as here,] it ‘could have been obviated or cured by factual showings or legal countersteps’ in the trial court” (Oram v Capone, 206 AD2d 839, 840 [1994]; see Matter of Jared, 225 AD2d 1049, 1049 [1996]; see generally Misicki v Caradonna, 12 NY3d 511, 519 [2009]; Bingham v New York City Tr. Auth., 99 NY2d 355, 359 [2003]). Moreover, appellate courts cannot and will not review an issue that has never been raised by the parties themselves. An exception to that rule is where a trial court or the Appellate Division determines, sua sponte, that it lacks subject matter jurisdiction (see Matter of Fry v Village of Tarrytown, 89 NY2d 714, 718 [1997]). In this case, the dissent would decide this appeal on an issue objectants “never so much as hinted much less claimed before” the Surrogate or this Court (Misicki, 12 NY3d at 519 [emphasis omitted]).
“For us now to decide this appeal on a distinct ground that we winkled out wholly on our own would pose an obvious problem of fair play. We are not in the business of blindsiding litigants, who expect us to decide their appeals on rationales advanced by the parties, not arguments their adversaries never made. In sum, [petitioner] de *208 serves an opportunity to refute the proposition on which the dissent would decide this appeal against him” {id.).
As the Court of Appeals recognized in Misicki,
“[w]hile appellate judges surely do not sit as automatons . . . , they are not freelance lawyers either. Our system depends in large part on adversary presentation; our role in that system is best accomplished when [we] determine [ ] legal issues . . . that have first been considered by . . . the trial . . . court” (id. [internal quotation marks omitted]).
“In our view, it would be fundamentally unfair to determine this issue sua sponte and conclude, as does our dissenting colleague, that [petitioner] failed to meet [his] initial burden” of rebutting the presumption that the 1996 will was revoked by destruction (Woods v Design Ctr., LLC, 42 AD3d 876, 878 [2007]; see e.g. Hann v Black, 96 AD3d 1503, 1503-1504 [2012]; CB Richard Ellis, Buffalo, LLC v D.R. Watson Holdings, LLC, 60 AD3d 1409, 1410 [2009]). Indeed, to decide this appeal on issues never raised by the objectants would “implicate due process concerns” (McHale v Anthony, 41 AD3d 265, 267 [2007]).
The dissent attempts to avoid the rules of preservation by contending that, regardless of preservation, “it was petitioner’s burden, as proponent of the 1996 will, ‘to make the proofs essential to its admission to probate’ ” (quoting Matter of Schillinger, 231 App Div 679, 679 [1931], affd 258 NY 186 [1932]). While we agree that petitioner had the initial burden of proof, we recognize that “[t]he preservation of an issue for appellate review is completely distinct from the question whether [a party] has sustained his [or her] burden of proof” (People v Duncan, 177 AD2d 187, 192 [1992], lv denied 79 NY2d 1048 [1992]). We are mindful that Duncan involves an appeal from a judgment of conviction in a criminal case, but we conclude that the above principle is applicable to all appeals heard by this Court.
Ill
We now address those contentions raised by objectants on appeal. Although our dissenting colleague questions whether the ex-husband or his parents had possession of the 1996 will, objectants contend that petitioner and his wife were the custodians of the 1996 will and that they failed in their duty as custodians. It is well settled that one who accepts custody of an original will *209 is “bound to return the instrument to its maker upon demand and[,] . . . after the death of the testator and upon notice of such death, . . . [is] bound to produce the will so that it might be probated” (Scholen v Guaranty Trust Co., 288 NY 249, 253-254 [1942]; see generally SCPA 2507 [3]). Here, as in Scholen, there is no evidence that petitioner or his wife “voluntarily assumed any greater obligation,” and objectants “allege[ ] no facts which would permit the inference that from the bailment a broader duty ar[o]se[ ]” (id. at 254).
Even assuming, arguendo, that the ex-husband also could have been considered a custodian of the will, we conclude that neither the ex-husband nor his parents were under any legal obligation to return the 1996 will to decedent at any time before her death inasmuch as it is undisputed that she never made a demand for its return (see id. at 253-254). Although decedent’s divorce decree required the ex-husband to return financial paperwork and any paperwork “needed to effectuate [the] division [of property],” the 1996 will was not a document needed to effectuate the division of any property. Moreover, petitioner and his wife were not parties to the divorce decree and thus were not subject to its provisions.
IV
Objectants further contend that the nomination of petitioner as alternate executor and alternate beneficiary must fail because such a nomination would fail under the law of Texas, and it would be inequitable to allow decedent’s former father-in-law to be the sole beneficiary of her estate. It is undisputed that the 1996 will was a valid will and that the law of Texas, if applicable, would invalidate any testamentary distributions to petitioner (see former Tex Prob Code § 69 [b]). In New York, however, a divorce operates to revoke testamentary distributions to former spouses only (see EPTL 5-1.4 [a], [b]). As objectants concede, New York law governs resolution of this case inasmuch as the real property is situated in this state and decedent was a domiciliary of this state at the time of her death (see EPTL 3-5.1 [b] [1], [2]; see generally Matter of Good, 304 NY 110, 115 [1952]; Matter of Strauss, 75 Misc 2d 454, 456 [1973]). Pursuant to New York law, the testamentary distribution to the ex-husband and his appointment as executor are revoked, but all other provisions of the will remain valid (see EPTL 5-1.4 [a], [b]; Matter of Coffed, 59 AD2d 297, 300 [1977], affd 46 NY2d 514 [1979]).
*210 We reject the contention of objectants that we should ignore the clear and unambiguous wording of EPTL 5-1.4, as well as our own precedent, and decide this case on equitable principles. Indeed, we have previously held that the provisions of EPTL 5-1.4 apply only to former spouses, not to members of the former spouse’s family (see Coffed, 59 AD2d at 300). Whereas Coffed involved a determination whether a former stepchild could inherit, and this case involves a former father-in-law, the statute does not permit us to distinguish between various members of the former spouse’s family. If testamentary distributions to former stepchildren remain valid under the statute, we are constrained to conclude that testamentary distributions to other members of the former spouse’s family also remain valid. We thus cannot rely on EPTL 5-1.4 to invalidate the testamentary distribution to petitioner; the clear and unambiguous language of the statute does not permit us to do so.
Contrary to the position of the dissent, such a result does not “circumvent the intent of the statute.” Even if we could assume that the ex-husband might someday inherit or obtain the property from petitioner, we cannot decide petitioner’s current legal rights to property based on our speculation of what he might do with that property in the future.
V
Finally, objectants contend that, although there is insufficient evidence to support admitting the lost will to probate {see SCPA 1407), there is sufficient evidence to establish that the lost will was duly executed, which thereby operates to revoke the 1996 will. We reject that contention.
Pursuant to EPTL 3-4.1 (a) (1) (A) and (B), “[a] will or any part thereof may be revoked or altered by . . . [ajnother will [or] [a] writing of the testator clearly indicating an intention to effect such revocation or alteration, executed with the formalities prescribed . . . for the execution and attestation of a will” (emphasis added). The only evidence at the hearing concerning the lost will was the testimony of decedent’s former neighbor, whom the Surrogate found to be “a highly credible witness.” Insofar as relevant to the issues on this appeal, the neighbor testified that, during the late summer or early fall of 2007, decedent received a package that she showed to the neighbor. The neighbor opened the package, which contained a cover letter from “an attorney’s office” and a legal document entitled “Last Will and Testament.” According to the neighbor, decedent *211 had been working with a divorce attorney in Texas and had been traveling back and forth to Texas to finalize her divorce.
The neighbor testified that, in addition to revoking all prior wills and naming decedent’s mother as the executrix, the legal document instructed that decedent’s property would be left to her brothers, with a small stipend to a niece and nephew. The legal document was signed by decedent, and “[t]here were two witnesses’ signatures.” The neighbor could not recall the names of the witnesses, but testified that the document stated that they had witnessed decedent’s signature to the document. There was a raised and embossed notary seal and a statement at the bottom of the third page indicating that the notary attested to the signing of the legal document. Although the neighbor retained the legal document for a period of time, she returned it to decedent before moving away from the area. It is undisputed that, despite a diligent search of decedent’s residence, neither that document nor any other purported will was discovered.
Pursuant to EPTL 3-5.1 (c), a will disposing of real property situated in this state
“is formally valid and admissible to probate in this state . . . if it is in writing and signed by the testator, and otherwise executed and attested in accordance with the local law of. . . [t]his state; . . . [t]he jurisdiction in which the will was executed, at the time of execution; or . . . [t]he jurisdiction in which the testator was domiciled, either at the time of execution or of death.”
Objectants contend that the evidence at the hearing was sufficient to establish that the lost will was duly executed and attested pursuant to EPTL 3-2.1. We note, however, that the testimony at the hearing failed to establish whether the lost will was executed and attested in New York or Texas. We therefore must consider the execution requirements for wills under the laws of both states.
In order for a will to be duly executed and attested in New York, the testator must sign the document at the end; the testator must sign or acknowledge the signature in the presence of the attesting witnesses; the testator must declare to each of the attesting witnesses that the instrument is his or her will; and there must be two attesting witnesses who shall, within 30 days, attest the testator’s signature and, at the request of the testator, sign their names and affix their residence addresses (see EPTL 3-2.1 [a] [l]-[4]). In order for a will to be duly executed in *212 Texas, the will must be in writing, be signed by the testator, and be attested by two or more credible witnesses above the age of 14 who shall subscribe their names to the will in their own handwriting in the testator’s presence (see former Tex Prob Code § 59).
We are constrained to conclude that the evidence at the hearing is insufficient to establish that the lost will was duly executed and attested under the laws of either state. With respect to New York’s EPTL 3-2.1, there was no testimony that the document was signed or acknowledged by decedent in the presence of the witnesses. Furthermore, there was no evidence that decedent declared to the witnesses that the document was her will. Finally, although the neighbor testified that decedent’s signature appeared on the document, there was no evidence that the signature was at the end of the document. With respect to former Texas Probate Code § 59, there was no evidence that the purported witnesses were over the age of 14 or that their signatures were in their own handwriting.
Although our dissenting colleague concludes that we may presume that the lost will was properly executed, we disagree with that conclusion. There is no dispute that, “fi]f an attorney-drafter supervises the execution of a will, there is a presumption of regularity that the will was properly executed” (Matter of Halpern, 76 AD3d 429, 431 [2010], affd 16 NY3d 777 [2011] [emphasis added]). Here, however, our dissenting colleague has made an assumption that an attorney in either New York or Texas drafted the lost will and supervised its execution. That assumption is based on the neighbor’s testimony that the document mailed to decedent in the fall of 2007 “was accompanied by a cover letter from a law office.” Although our dissenting colleague cites Matter of Derrick (88 AD3d 877, 879 [2011]) and Matter of Moskoff (41 AD3d 481, 482 [2007]) for the proposition that we may infer the lost will was prepared by an attorney because it was accompanied by a cover letter from an attorney’s office, neither case supports that proposition. In both cases, the disputed will was actually before the Surrogate, and it was an established and undisputed fact that an attorney drafted those wills and supervised their execution.
As the First Department stated in Halpern, although “a valid attestation clause raises a presumption of a will’s validity, . . . it is nonetheless incumbent upon Surrogate’s Court to examine all of the circumstances surrounding the execution of the document in order to ascertain its validity” (76 AD3d at 431). Here, *213 we are unable to examine any of the circumstances surrounding the execution and attestation of the lost will because we do not have the document or a copy thereof, we do not know where it may have been executed, we do not know who drafted it or who may have witnessed its execution, and it was not on file with a government agency (cf. Derrick, 88 AD3d at 878; Halpern, 76 AD3d at 430-431; Moskoff, 41 AD3d at 482; Matter of Coniglio, 242 AD2d 901, 902 [1997]). We therefore decline to make a presumption based on an assumption.
Objectants contend in the alternative that, even if the evidence presented at the hearing failed to establish the elements of due execution and attestation, thereby precluding the lost will from being admitted to probate, the evidence, including evidence of decedent’s intent, was sufficient in equity to establish that the 1996 will was revoked. We reject that contention and respectfully disagree with the dissent’s conclusion to the contrary.
“With few exceptions not here relevant, the exclusive mechanism for revocation of a testamentary instrument is contained in EPTL 3-4.1. That section wisely requires that a revocatory instrument be executed with the same formalities as those needed to make a valid will. A less stringent provision would open the door to the dual evils of fraud and perjury” (Coffed, 46 NY2d at 519).
Thus, if a document is not duly executed and attested in accordance with EPTL 3-2.1, then it cannot operate to revoke, pursuant to EPTL 3-4.1, a prior, duly executed and attested will.
We agree with the dissent that, even if the evidence concerning a subsequent will is insufficient to permit the subsequent will to be admitted to probate pursuant to SCPA 1407, that evidence may nevertheless be sufficient to establish that an earlier will was revoked (see Matter of Wear, 131 App Div 875, 876 [1909]; Matter of Shinn, 7 Misc 2d 623, 624-625 [1956]; Matter of Henesey, 1 Misc 2d 864, 868-869 [1956]; but see Matter of Logasa, 161 Misc 774, 775-776 [1937]; see generally Matter of Goldsticker, 192 NY 35, 37 [1908]). The evidence concerning a subsequent will must establish, however, that it was duly executed and attested before the subsequent will may be used to establish revocation of a prior will (see e.g. Wear, 131 App Div at 876; Shinn, 7 Misc 2d at 624; Matter of Walsh, 5 Misc 2d 801, 802-803 [1957]; Henesey, 1 Misc 2d at 866; Logasa, 161 Misc at 775-776). The subsequent wills in Wear, Shinn, Walsh and Hen *214 esey were duly executed and attested, but they were not admitted to probate based on the fact that they had been lost and were presumed revoked (see Wear, 131 App Div at 876-877; Shinn, 7 Misc 2d at 624-625; Walsh, 5 Misc 2d at 802; Henesey, 1 Misc 2d at 868; see generally SCPA 1407 [1]; Matter of Staiger, 243 NY 468, 471-472 [1926]; Matter of Kennedy, 167 NY 163, 168 [1901]). In contrast, where the evidence fails to establish that a purported subsequent will was duly executed and attested, Surrogates have held that the evidence is insufficient to establish that the earlier will was revoked (see Goldsticker, 192 NY at 37; Matter of Katz, 78 Misc 2d 790, 791 [1974]; Matter of Andrews, 195 Misc 421, 430-431 [1949]; Logasa, 161 Misc at 776; Matter of Kiltz, 125 Misc 475, 479-480 [1925]). Here, inasmuch as the evidence concerning the lost will is insufficient to establish that it was duly executed and attested, we conclude that the evidence is insufficient to establish that the 1996 will was revoked.
VI
With respect to the dissent’s general considerations of equity and the power of the Surrogate to fashion equitable remedies, we note that, even if “[t]he equities in the instant case may appear to favor a different result, ... a more significant consideration is that the formalities attendant upon the revocation of a will are necessary to prevent mistake, misapprehension and fraud” (Coffed, 59 AD2d at 300). Even if we may
“surmise that [decedent] intended to change [her] will in accord with a natural desire to benefit [her relatives] exclusively[,] ... it is not for the courts to circumvent the statutory requirements regarding the revocation of a will. Those provisions do not contemplate an implied revocation, but declare that revocation must be effected with the same formality with which a will is executed or by some act of mutilation or destruction” (id.).
VII
Accordingly, because objectants failed to establish that the 1996 will was revoked, we conclude that the decree in each appeal should be affirmed.